[No. 60252-2. En Banc. March .17, 1994.]
*In the Matter of the Marriage of* ROSEMARY B.
GREENLAW, *Respondent, and* DANIEL M. SMITH III,
*Petitioner.*

*Bertha B. Fitzer; John J. Durkin* and *Troup, Christnacht, Ladenburg, McKasy & Durkin, P.S.,* for petitioner.

*Rosemary B. Greenlaw,* pro se.

*Colleen Allen Grady* on behalf of Northwest Men's Law Center, Inc., amicus curiae for petitioner.

*Rosemary Daszkiewicz* on behalf of Northwest Women's Law Center, amicus curiae for respondent.

ANDERSEN, C.J. —

## FACTS OF CASE

This is a child custody dispute. The mother, who is custodian of the child, challenges the subject matter jurisdiction of a Washington trial court to modify its own custody decree once the child and custodian have moved from the state of Washington and established a new "home state" under the Uniform Child Custody Jurisdiction Act, RCW 26.27.

Rosemary B. Greenlaw (the mother) and Daniel Smith III (the father) were married in January 1978. Their son, Alexander Geoffrey Smith (Alex), the child who is the subject of this proceeding, was born October 14, 1978. He is now 15 years old. The marriage was dissolved on March 11, 1982, when Alex was 3 1/2 years old. Under the decree of dissolu-

tion, the mother was granted custody of the child and the father apparently was granted reasonable visitation.[1]

The parents have a history of conflict which is reflected in the Pierce County Superior Court dissolution file. Correspondence between the parents apparently was regularly copied to the court file following the dissolution.

In May of 1985, the mother accepted a 3-year job assignment with the United States Army in Frankfurt, Germany. The mother's job required her to travel frequently and she placed Alex in a German-speaking boarding school for 3 years, from approximately age 7 to age 10. During this time Alex saw his mother only irregularly on weekends and on holidays.

In 1988, Alex and his mother returned to the United States and began living in California, and Alex resumed regular visitation with his father in Tacoma. From 1988 to 1990, Alex and his mother moved four times; Alex attended three different schools during that 2-year period. In 1990, the mother began attending law school in San Jose and Alex spent the school year living with his mother's former boyfriend in Berkeley, California. During the 1990-91 school year, Alex apparently saw his mother on weekends and saw his father during school vacation periods.

While Alex was in Tacoma with his father during visits in 1990 and 1991, the child began seeing a counselor who ultimately recommended a change in custody from the mother to the father. The counselor concluded:

> In summary, the emotional and mental needs of Alex, including needs of warmth, love, nurturing, caring and involvement in the social, cultural and family development have not been met or provided by his mother in the years that

---

[1]Unfortunately, the decree is not part of the record on review. It was entered prior to the enactment of the parenting act of 1987, Laws of 1987, ch. 460. The parenting act replaced the terms "custody" and "visitation" with the concepts of parenting plans and parental functions. RCW 26.09.004; *In re Marriage of Kovacs*, 121 Wn.2d 795, 800-01, 854 P.2d 629 (1993). The custody order involved here would, if modified, be considered a "parenting plan". RCW 26.09.909(2). However, because this case involves an interstate jurisdictional issue, the use of the terms "custody" and "visitation" is appropriate and these terms are used herein. *See* RCW 26.09.285.

she has been charged with the custodial relationship of Alex. Similarly, these needs have not been met by the surrogate caretakers which Alex's mother has placed him with during several of these years. Alex has inappropriately been put in the position of self-parenting as a result of the neglect and virtual parental abandonment by his mother, his custodial parent. This situation is injurious to Alex and in my opinion there· is an immediate need for corrective intervention to avoid additional injury and to assist Alex in a program of normal childhood development.

Supplemental Clerk's Papers, at 4.

The mother denies the allegations of neglect and abandonment.

In July of 1991, the father filed a petition in the Pierce County Superior Court, asking that he be granted custody of Alex.

The mother responded by asking the court to decline jurisdiction over the matter and to transfer the case to the State of California, claiming California more properly had jurisdiction to determine the issues.

The superior court commissioner set the matter for hearing and appointed a guardian ad litem to investigate the request for modification. The hearing on the mother's motion was held after the guardian ad litem had filed his initial report and after the commissioner had interviewed the child ·in chambers. The commissioner, in an order entered September 20, 1991: (1) determined that it had jurisdiction to hear the case because Washington had significant contacts with the child and because an emergency existed; and (2) changed the residential placement of the child pending a final hearing on the father's petition.[2]

Following entry of the commissioner's order, the mother moved to revise the decision with respect to the jurisdic-

---

[2]Findings of fact were not entered and the reason for changing custody pending trial is not clear. The record on review is sparse and incomplete. We note that it does not support a change of custody based on imminent danger to the child's well being. We do not review the propriety of the temporary order, however, because the issue is not before us. The mother challenged all parts of the order *except* that part that *temporarily transfers custody of the child to the father.* Whether the facts support an order permanently changing custody of the child is not yet at issue in the case.

tional issues. The motion for revision was denied by the Superior Court on December 13, 1991, and the mother appealed. The Court of Appeals reversed, holding that Washington did not have subject matter jurisdiction.[3] We reverse the Court of Appeals.

Two issues are determinative of the appeal.

ISSUES

ISSUE ONE. Does Washington have continuing jurisdiction to modify its own custody orders after the child and custodial parent have established residence in another state, if the noncustodial parent continues to reside in Washington and the child continues to have some connection with Washington?

ISSUE TWO. If so, did the trial court abuse its discretion in refusing to decline to exercise jurisdiction on the ground that California is a more convenient forum?

DECISION

ISSUE ONE.

CONCLUSION. A Washington court which enters a child custody decree continues to have jurisdiction to modify that decree so long as one of the parties remains in the state and so long as the child's contact with the state continues to be more than slight.

The principal issue in this appeal is whether a Washington court has continuing jurisdiction to modify its own decree after the child and custodial parent move away from Washington and establish a new "home state",[4] but while the noncustodial parent continues to live in Washington and the child continues to have some connection with this state.

---

[3]*In re Marriage of Greenlaw*, 67 Wn. App. 755, 840 P.2d 223 (1992), *review granted*, 121 Wn.2d 1021 (1993).

[4]"Home state" is the state in which "the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period". RCW 26.27.020(5). There is no dispute in this case that California was the child's home state at the time the modification petition was filed in this state.

This issue was not clearly phrased by the parties until the father filed his first supplemental brief in this court. Until that time, the parents, the trial court and the Court of Appeals all failed to mention or discuss the section of the Uniform Child Custody Jurisdiction Act (hereinafter UCCJA) that recognizes a decree state's continuing jurisdiction to modify its own custody orders.[5] Pursuant to RAP 12.1, we directed the parties to file additional briefing discussing what effect, if any, RCW 26.27.140 (section 14 of the UCCJA) has on the jurisdictional issue.

Our resolution of this issue depends on an analysis of two laws, (1) the UCCJA, RCW 26.27 (hereinafter the Act), a uniform law that has been adopted by all 50 states and the District of Columbia,[6] and (2) the Federal Parental Kidnapping Prevention Act of 1980. 28 U.S.C. § 1738A.

The UCCJA was a response to an increasing tendency of courts to assert jurisdiction over the custody of children within their state's borders, without regard to the length of time the children lived within the state and without regard to the quality of contacts the children had with the state.[7]

The UCCJA is to be interpreted according to its purposes.[8] The purposes of the Act are set forth in the Washington statute as follows:

(1) The general purposes of this chapter are to:

(a) Avoid jurisdiction competition and conflict with courts of other states in matters of child custody which have in the past

---

[5]UCCJA § 14, 9 U.L.A. 292 (pt. 1) (1988); codified in Washington as RCW 26.27.140.

[6]Table of jurisdictions adopting the Act, 9 U.L.A. 15-16 (pt. 1) (Supp. 1993). While there are some variations from state to state, the principal provisions of UCCJA have been substantially adopted in all states. The UCCJA is codified in Washington at RCW 26.27.

[7]See Donigan, *Child Custody Jurisdiction: New Legislation Reflects Public Policy Against Parental Abduction*, 19 Gonz. L. Rev. 1, 4-5 (1983-1984); Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA*, 14 Fam. L.Q. 203, 203-05 (1981).

[8]RCW 26.27.010(2); UCCJA § 1(b), 9 U.L.A. at 124 (pt. 1); UCCJA § 1 comment, 9 U.L.A. at 124 (pt. 1).

resulted in the shifting of children from state to state with harmful effects on their well-being;

(b) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(c) Assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

(d) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

(e) Deter abductions and other unilateral removals of children undertaken to obtain custody awards;

(f) Avoid relitigation of custody decisions of other states in this state insofar as feasible;

(g) Facilitate the enforcement of custody decrees of other states;

(h) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and

(i) Make uniform the law of those states which enact it.

RCW 26.27.010(1).[9]

The Act also sets forth the bases upon which a court may initially assume jurisdiction to enter a custody order. The Washington Act provides:

(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if the conditions as set forth in any of the following paragraphs are met:

(a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this

---

[9]*See also* UCCJA § 1, 9 U.L.A. at 123-24 (pt. 1).

state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(c) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(d)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (a), (b), or (c) of this subsection, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.

(2) Except under subsection (1)(c) and (d) of this section, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

(3) Physical·presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

RCW 26.27.030.

These bases for assuming jurisdiction are not so much a *grant* of jurisdiction as they are a *limitation* upon a court's assumption of jurisdiction.[10] When a court is asked to modify an existing custody decree, the above quoted section is to be read in light of the additional restrictions contained in RCW 26.27.140 (UCCJA § 14).[11]

RCW 26.27.140 provides:

(1) If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction.

The official comment to the parallel section in the UCCJA states:

Courts which render a custody decree normally retain continuing jurisdiction to modify the decree under local law. Courts in other states have in the past often assumed jurisdic-

---

[10]*See, e.g.*, UCCJA § 3 comment, 9 U.L.A. at 145 (pt. 1); *Barndt v. Barndt*, 397 Pa. Super. 321, 580 A.2d 320, 323 (1990).

[11]UCCJA § 3 comment, 9 U.L.A. at 145 (pt. 1).

tion to modify the out-of-state decree themselves without regard to the preexisting jurisdiction of the other state. In order to achieve greater stability of custody arrangements and avoid forum shopping, subsection (a) declares that other states will defer to the continuing jurisdiction of the court of another state as long as that state has jurisdiction under the standards of this Act. *In other words, all petitions for modification are to be addressed to the prior state if that state has sufficient contact with the case to satisfy section 3. The fact that the court had previously considered the case may be one factor favoring its continued jurisdiction. If, however, all the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere.*

(Citations omitted. Italics ours.) UCCJA § 14 comment, 9 U.L.A. 292 (pt. 1) (1988).

Although all states are bound to the same jurisdictional mandates, there has been considerable confusion about which of two or more states has authority to act when a state is asked to modify its own custody decree or the custody decree of another state.[12]

Professor Clark writes:

With advent of the UCCJA . . . the analysis of the continuing jurisdiction problem has changed but the uncertainty and unpredictability of result in the case law has not been reduced. Although the problem was recognized by all who dealt with interstate custody, for some unexplained reason it was not explicitly covered by the UCCJA. The crucial section of that Act is section 14 . . . The language of this section must of course be construed with the statutory purposes in mind, particularly those purposes related to the avoidance of the re-litigation of custody disputes and to the elimination of continuing controversies over custody. The Commissioners' Comments to section 14 assert that in order to achieve those purposes petitions for modification must be submitted to the state rendering the initial decree so long as that state meets the requirements for jurisdiction imposed by section 3 of the Act. Unfortunately those requirements are often so difficult to apply to specific situations that the Commissioners' precepts are not helpful in most instances.

(Footnotes omitted.) 1 H. Clark, Jr., *Domestic Relations in the United States* § 13.5, at 808-09 (2d ed. 1987).

---

[12]*See* 1 H. Clark, Jr., *Domestic Relations in the United States* § 13.5 (2d ed. 1987); *Kumar v. Superior Court*, 32 Cal. 3d 689, 699, 652 P.2d 1003, 186 Cal. Rptr. 772 (1982); *Yurgel v. Yurgel*, 572 So. 2d 1327, 1330 (Fla. 1990).

Professor Donigan states:

The Commissioners' Note to section 14 of the UCCJA indicates the original state must satisfy section 3 in order to have continuing jurisdiction. This requirement usually involves an inquiry into whether the original state is still the home state, and if not, whether it has lost significant connections with the child. The Note[s] to section 14 specify that the first state loses its continuing jurisdiction once "all the persons involved have moved away or the contact with the state has otherwise become slight. . . ." While it has generally been accepted that the decree state loses its jurisdiction once all parties have moved away, the troublesome question is whether the decree state loses its jurisdiction *prior* to that time.

. . . The Act was intended to create exclusive continuing jurisdiction in the decree state, but the interpretations of continuing jurisdiction have been as inconsistent as the language in the Commissioner's Notes to sections 3 and 14. The section 3 Note stresses "maximum rather than minimum contact with the State;" yet in a modification setting, the Note to section 14 suggests that contact something more than "slight" is sufficient. The Note to section 14 should control as section 3 is made subject to the further limitations of 14 in a modification action.

. . . A uniform deference to the original state creates predictability and lessens incentives to continuously relitigate custody orders in new states.

(Footnotes omitted. Italics ours.) Donigan, *Child Custody Jurisdiction: New Legislation Reflects Public Policy Against Parental Abduction*, 19 Gonz. L. Rev. 1, 15-18 (1983-1984).

Professor Bodenheimer, a draftsman of and the reporter for the UCCJA, in an often quoted explanation of section 14 of the Act, states:

In other words, the continuing jurisdiction of the prior court is exclusive. Other states do not have jurisdiction to modify the decree. They must respect and defer to the prior state's continuing jurisdiction. Section 14 is the key provision which carries out the Act's two objectives of (1) preventing the harm done to children by shifting them from state to state to relitigate custody, and (2) preventing jurisdictional conflict between the states after a custody decree has been rendered.

. . .

Exclusive continuing jurisdiction is not affected by the child's residence in another state for six months or more. Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of the prior decree where the court record and other evidence exists and

where one parent or another contestant continues to reside. Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required.

(Footnote omitted.) Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA*, 14 Fam. L.Q. 203, 214-15 (1981).

By way of illustration, Professor Bodenheimer describes a situation which is similar to that presented by this case:

A typical example is the case of the couple who are divorced in state *A*, their matrimonial home state, and whose children are awarded to the wife, subject to visitation rights of the husband. Wife and children move to state *B*, with or without permission of the court to remove the children. State *A* has continuing jurisdiction and the courts in state *B* may not hear the wife's petition to make her the sole custodian, eliminate visitation rights, or make any other modification of the decree, even though state *B* has in the meantime become the "home state" under section 3. The jurisdiction of state *A* continues and is exclusive as long as the husband lives in state *A* unless he loses contact with the children, for example, by not using his visitation privileges for three years.

Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws*, 22 Vand. L. Rev. 1207, 1237 (1969).

In part because of the confusion resulting from conflicting state court decisions regarding child custody jurisdiction, Congress enacted the Parental Kidnaping Prevention Act of 1980 (PKPA), 28 U.S.C. § 1738A.[13] The PKPA requires states to give full faith and credit to the custody decrees of other states which are consistent with the federal law. The PKPA also attempts to more clearly limit the circumstances under which a court may modify the custody decree of another state. In addition to the jurisdictional bases set forth in section 3 of the UCCJA, the federal law includes the following basis:

The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection

---

[13]*See* Pub. L. No. 96-611, § 7(a)(2), 94 Stat. 3568 (1980) (Congressional Findings and Declaration of Purpose).

(c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.

28 U.S.C. § 1738A(d). Subsection (c)(1), which is referred to, requires that a state have jurisdiction to modify a custody decree under that state's own laws.

The PKPA should be considered whenever the court is asked to determine which of two or more states has jurisdiction to decide a custody dispute.[14]

Much of the confusion generated by the language of the two laws can be eliminated if a trial court which is asked to determine custody clearly distinguishes between jurisdiction to determine the *initial* custody of a child and jurisdiction to *modify* a prior custody order.[15]

In the present case that distinction was not made. The trial court and the Court of Appeals both failed to consider the presumption created by the UCCJA and the PKPA that the decree state — Washington — had continuing jurisdiction to modify its own order and other states must decline to modify until the decree state loses or declines jurisdiction.[16]

■■ It appears that the majority of appellate courts which have addressed the issue presented here hold that the state in which the initial decree was entered has *exclusive* continuing jurisdiction to modify the initial decree if: (1) one of the parents continues to reside in the decree state; and (2) the child continues to have some connection with the decree state, such as visitation.[17]

---

[14]*In re Thorensen*, 46 Wn. App. 493, 497, 730 P.2d 1380 (1987).

[15]*See Kumar*, 32 Cal. 3d at 699, 186 Cal. Rptr. at 778.

[16]RCW 26.27.140; UCCJA § 14.

[17]*See, e.g., State ex rel. D.S.K.*, 792 P.2d 118, 125 (Utah Ct. App. 1990); *Kumar*, 32 Cal. 3d at 696, 186 Cal. Rptr. at 776-77; *Barndt v. Barndt*, 397 Pa. Super. 321, 333, 580 A.2d 320, 326 (1990); *Arbogast v. Arbogast*, 174 W. Va. 498, 504, 327 S.E.2d 675, 681 (1984); *Yurgel v. Yurgel*, 572 So. 2d 1327, 1331 (Fla. 1990). *See also* Annotation, *Child Custody: When Does State That Issued Previous Custody Determination Have Continuing Jurisdiction Under Uniform Child Custody Jurisdiction Act (UCCJA) or Parental Kidnapping Prevention Act (PKPA), 28 USCS § 1738A*, 83 A.L.R.4th 742 (1991).

We agree that this approach best advances the purposes of the law and provides the most security for children who are subject to these decrees.[18]

We now apply this law to the present case. Washington is the decree state and the father continues to reside in Washington. There is no dispute that Washington had jurisdiction to enter the initial decree. Washington law provides that a custody decree may be modified under certain circumstances.[19]

The remaining question is whether Alex has continued to have a sufficient connection with the state of Washington to result in continuing jurisdiction over his welfare. We conclude that he has. First, the Pierce County Superior Court file reflects the correspondence between the parents for a number of years, and reflects the history of this litigation. Second, the child has had consistent visits with his father when the child has been in the United States. Third, the child's extended family on both the mother's side and the father's side live in Washington in the Tacoma area. Fourth, the child's counselor at the time the petition was filed is in Washington.[20] Fifth, Alex, at age 15, is mature enough to have an opinion about his custody and has expressed that he wants to live with his father. Substantial evidence regarding the child's future care, education, social development and

---

[18]This view is consistent with our earlier discussions of the UCCJA. For example, even before the UCCJA was enacted in the state of Washington, this court noted that the Act would not permit modification of a foreign decree unless the sister state lacked jurisdiction under the Act or had refused to assume jurisdiction to modify the decree. *In re Marriage of Dunkley*, 89 Wn.2d 777, 784 n.4, 575 P.2d 1071 (1978). In *Dunkley*, we stated,

We are in agreement with the general purposes of the UCCJA, which, as we read them, are to limit rather than proliferate jurisdiction, to encourage deference to foreign courts so as to deter forum shopping and repeated litigation, and to emphasize the importance of stability in a child's environment as the crucial consideration in terms of a child's best interests in any custody determination.

*Dunkley*, 89 Wn.2d at 786.

[19]RCW 26.09.260.

[20]The mother says that Alex also has a counselor in California, but Alex had not met with that counselor during the last year that he resided in California.

family and other personal relationships exists in the state of Washington.[21] Thus the child's contact with the state of Washington continues to be more than slight.

The mother, who appears in this case pro se, is a lawyer in California. She points to two Washington decisions which she argues require us to find that Washington does not have jurisdiction. The first is *State v. Carver*, 113 Wn.2d 591, 781 P.2d 1308, 789 P.2d 306 (1989), a case in which this court considered the constitutionality of our custodial interference in the first degree statute.[22] The mother interprets *Carver* as holding that a state loses jurisdiction after a minor child has resided in another state for 6 months. However, in *Carver*, *both* parents and the child had left California, where a temporary order had been entered, and resided together in Washington when proceedings were begun in this state. The father later returned to California and completed a dissolution action in that state without giving notice to the mother. *Carver* recognizes that RCW 26.27.140 prohibits Washington from modifying another state's custody decree unless Washington can meet the UCCJA's jurisdictional requirements and the other state no longer has jurisdiction.[23] The *Carver* opinion then properly followed a 2-step analysis, finding first that Washington had jurisdiction under RCW 26.27.030 and second that California had lost jurisdiction. The bases for California's loss of jurisdiction were that (1) the child had established a new home state, *and* (2) California's custody decree was made without proper notice to the mother. Under Washington law, the child's change of residence is not a sufficient basis, on its own, for concluding that the decree state has lost jurisdiction.[24]

In *Carver*, however, both parents and the child had left the decree state, a fact which would result in a loss of

---

[21]RCW 26.27.030(1)(b).

[22]RCW 9A.40.060.

[23]*State v. Carver*, 113 Wn.2d 591, 602, 781 P.2d 1308, 789 P.2d 306 (1989).

[24]2 Washington State Bar Ass'n, *Family Law Deskbook* § 47.6(6) (1991).

jurisdiction over the child's custody. Furthermore, *Carver* makes it clear that a court's *continuing* jurisdiction is dependent upon judicial proceedings being consistent with the UCCJA and PKPA. When the California court entered an order without proper notice, it lost jurisdiction.[25] *Carver* is consistent with *In re Thorensen*, 46 Wn. App. 493, 730 P.2d 1380 (1987), which also is cited by the mother.

Both *Carver* and *Thorensen* are distinguishable from the present action. In each case, Washington courts were asked to determine custody of a child who had been the subject of a proceeding in another state. In each case, the mother had not received notice of the other state's custody proceeding. This lack of notice was critical to the determination that the decree states had lost jurisdiction and that Washington courts thus had jurisdiction to modify the prior decrees.

In the present case the child has established a home state in California. Under California law this fact, alone, would not be a sufficient basis for determining that Washington had lost jurisdiction and that California was the appropriate forum for deciding the modification action. In *Kumar v. Superior Court*, 32 Cal. 3d 689, 700, 652 P.2d 1003, 186 Cal. Rptr. 772 (1982), the California Supreme Court held that under section 14 of the UCCJA

> the strong presumption is that the decree state will continue to have modification jurisdiction until it loses all or almost all connection with the child.

*Kumar*, 32 Cal. 3d at 699, 186 Cal. Rptr. at 778.

Consistency and clarity are important to this area of law and the UCCJA was "designed to bring some semblance of order into the existing chaos" of pre-UCCJA decisions.[26]

Interpreting the UCCJA to allow an automatic shift in modification jurisdiction simply because a child establishes a new home state would not further the purposes of the Act as it would permit forum shopping and instability of custody decrees.[27]

---

[25]*Carver*, 113 Wn.2d at 609-10.

[26]UCCJA prefatory note, 9 U.L.A. 116, 118 (pt. 1) (1988).

[27]*See State ex rel. D.S.K.*, 792 P.2d 118, 124 (Utah Ct. App. 1990).

We thus interpret the UCCJA and PKPA to mean that jurisdiction to modify a custody decree continues with the decree state so long as: (1) that state's decree is entered in compliance with the UCCJA and PKPA; (2) one of the parents or other contestants continues to reside in the decree state; and (3) the child continues to have more than slight contact with the decree state. The child's continued visitation with the parent who remains in the decree state may constitute more than slight contact with the decree state.

ISSUE TWO.

CONCLUSION. The trial court did not abuse its discretion in denying the mother's request that it decline to exercise jurisdiction on the basis that California is the more convenient forum.

Even though a decree state has jurisdiction to modify its own decree, that state is not required to retain jurisdiction if another state appears to be a more appropriate, more convenient forum.[28] However, the fact that another jurisdiction may be *as* appropriate a forum as the decree state does not give that second state concurrent jurisdiction to decide the case.[29]

RCW 26.27.070 provides that a court which has jurisdiction to determine custody or to modify a custody order *may* decline to exercise its jurisdiction if it is an inconvenient forum to make a custody determination under the circumstances of the case and the court of another state is a more appropriate forum.[30]

> In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
> (a) If another state is or recently was the child's home state;

---

[28]RCW 26.27.070.

[29]Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA*, 14 Fam. L.Q. 203, 216-17 (1981) (the "concurrent jurisdiction" theory is incompatible with the clear language of section 14 of the UCCJA).

[30]RCW 26.27.070(1).

(b) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;

(c) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(d) If the parties have agreed on another forum which is no less appropriate; and

(e) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in RCW 26.27.010.

RCW 26.27.070(3).[31]

 Such a ruling is discretionary.[32] A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds.[33]

In this case, based on the record on review, the trial court would have been justified in ruling either way on the motion to decline jurisdiction. Although California was the home state of the child and had some information about the child, Washington also had substantial evidence, including the court file discussed above, the child's counselor, and Alex's extended family, available within its jurisdiction. On the record before us, the trial court did not abuse its discretion in denying the motion to decline jurisdiction.

Because Washington's jurisdiction in the present case continued, the trial court did not need to determine whether it could assert jurisdiction based on the presence of an emergency under RCW 26.27.030(1)(c). An analysis of the emergency basis for jurisdiction by this court is unnecessary to our decision and would be inconsistent with our holding here that initial and modification jurisdiction should be viewed differently. We thus do not decide whether the trial court properly applied that section of the statute to the facts of this case.

---

[31]*See In re Marriage of Verbin*, 92 Wn.2d 171, 179-80, 595 P.2d 905 (1979) (decided before the UCCJA was enacted in Washington, but discussing the inconvenient forum section of the UCCJA).

[32]*In re Thorensen*, 46 Wn. App. at 504.

[33]*In re Marriage of Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993).

We have carefully considered the remaining issues raised by the parties and determine that they are without merit.

The Court of Appeals is reversed and the case is remanded for trial on the merits.

UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.

Reconsideration denied May 17, 1994.