[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO DISMISS POST JUDGMENT MOTION TO MODIFY VISITATION
An action for divorce was brought in this matter with a return date of February 11, 1997. Judgment of divorce was entered on June 9, 1997 and the judgment incorporated the agreement of the parties regarding custody and visitation of the minor child. CT Page 11474 The agreement noted that the mother intended to relocate with the child to New Hampshire. Visitation after the contemplated move was to be "reasonable and flexible." However, the agreement stated that if the visitation schedule is found to be "unsatisfactory" . . . "the parties shall have the opportunity to petition this court to modify the [visitation] order to a fixed schedule." (Emphasis added by court). The agreement also provided that the plaintiff mother was to give the defendant 30 days notice before moving to New Hampshire.
On February 2, 1998, the defendant filed a motion to modify visitation claiming he had not received reasonable and flexible visitation, the mother was moving, and that he therefore wanted a fixed visitation schedule. On February 23, a Federal Parental Kidnapping Prevention Act Statement was signed by the defendant, the plaintiff and the attorney for the plaintiff. That document acknowledged that
 3. Connecticut has jurisdiction over this matter under state law by virtue of the fact that it is the home state of the child, and has historically been the home state of the child.
 4. Custody jurisdiction is based upon the conditions set forth in 28 U.S.C. § 1738A(c)(2) as Connecticut is the home state of the child, no other state has current jurisdiction over the child and it is in the best interests of the child to assert jurisdiction at this time in Connecticut.
On May 8, 1998, the parties entered into another agreement which was approved by the court. Basically, it provided that the defendant father would visit with the child the first Sunday of the month; on the third Saturday of each month the mother agreed to bring the child to Connecticut for an overnight visit with the child in this state. At the very end of the agreement it stated that: "The parties agree to set the matter down for monitoring in 4 months but agree that if the schedule is a `disaster' either can petition the court for an earlier review." The agreement was again signed by the plaintiff and her lawyer and by the defendant.
In April of 1999, an attorney commenced to represent the defendant and filed an appearance in the file. On April 23, 1999, the defendant filed a motion to modify visitation requesting visitation to be at his home in Connecticut from Friday to Saturday night. The basis for the motion was a claim by the CT Page 11475 defendant, set forth in the motion, that: "The defendant suffers from health problems that does [sic] not allow him to travel long distances. Plaintiff has failed to follow visitation schedule and to return to court for monitoring."
On May 23, 1999, counsel for the plaintiff filed a motion to dismiss, pursuant to P.B. § 41-8, the defendant's motion to modify visitation, post judgment. The plaintiff claims Connecticut no longer has jurisdiction; the motion relies on the Uniform Child Custody Jurisdiction Act [UCCJA] to argue that the absence of jurisdiction in our state is based on the fact that the home state of the child is New Hampshire. It is claimed that the plaintiff has remarried and still resides with her current husband and the child in New Hampshire since March 1998.[1]
The plaintiff makes the additional nonjurisdictional argument that Connecticut is a "forum non conveniens" and should decline to accept jurisdiction in any event.
The parties have filed several briefs on the issues raised by the plaintiff's motion to dismiss.
The court will address the issue of jurisdiction.
The states have adopted the UCCJA for a variety of reasons, several of which, to the court at least, are particularly relevant to the jurisdictional issue here. Section 46b-91 states, among other reasons, that our state adopted the act to:
 (1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which in the past resulted in the shifting of children from state to state with harmful effects on their well being. . . .
 (4) discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child.
 (5) deter abductions and other unilateral removals of children undertaken to obtain custody awards
 (6) avoid relitigation of custody decisions of other states in this state insofar as feasible.
 (7) facilitate the enforcement of custody decrees of other CT Page 11476 states.[2]
Of importance in applying the act and achieving its purposes in a case like this are the following definitions in § 46b-92 of the act. There it says:
 (3) "Custody determination" means a court decision and court orders and instructions providing for the custody of a child, including visitation rights; (emphasis added) . . .
 (4) "Custody proceeding" means a proceeding in which a custody determination is an issue . . .
 (7) "Initial decree" means the first custody decree concerning a particular trial, including a temporary order of custody granted pendente lite.
 (8) "Modification decree" means a custody decree which modifies for replaces a prior decree, whether made by the court which rendered the prior decree or by another court.
The language of the federal Parental Kidnapping Prevention Act of 1980 (PKPA), 28 U.S.C. § 1738A must now be examined. That act requires the states to give full faith and credit to the custody decisions of other states that are consistent with federal law. The requirement, of course, is mandatory because of the Supremacy Clause of the federal constitution. As noted in the instructive case of Greenlaw v. Smith, 869 P.2d 1024, 1031 (Wash., 1994): "The PKPA also attempts to more clearly limit the circumstances under which a court may modify the custody decree of another state." In other words, a question presented here is whether jurisdiction now exclusively lies in the courts of New Hampshire to modify visitation in this case. But Connecticut already has entered orders as to visitation so a predicate question to an answer which would say New Hampshire has such exclusive jurisdiction is the question as to whether Connecticut now in fact has continuing jurisdiction, because of its prior orders, to make rulings regarding visitation — if it does, then barring an emergency situation or a declining of jurisdiction by Connecticut, New Hampshire does not have such exclusive jurisdiction and such jurisdiction should remain in our state. The federal act must be looked to in light of its objectives and the supremacy clause. That act at 28 U.S.C. § 1738(a)(d) says:
 The jurisdiction of a court of a state which has made a CT Page 11477 child custody determination consistently with the provisions of this act continues as long as the requirements of subsection (c)(1) of this section continues to be met and such state remains the residence of the child and any contestant.
Section (c)(1) of § 1738(A) requires that a state [here Connecticut] have jurisdiction to modify a custody decree under the laws of that state. Where and how is that determined? One must then go to the law of the state which it is claimed has such "continuing" jurisdiction — here the law of Connecticut, specifically § 46b-93 of the UCCJA which defines "jurisdiction for the purposes of the act." That act at subsection (a) reads as follows:
 Sec. 46b-93. Jurisdiction. (a) A court of this state shall have jurisdiction to make a child custody determination by initial or modification decree if: (1) This state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six months before the commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or (2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships; or (3) the child is physically present in this state and (A) the child has been abandoned or (B) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or (4)(A) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivisions (2) or (3) of this subsection, or another] state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) it is in the best interest of the child that this court assume jurisdiction.
Subsection (c) states that: "Physical presence of the child is not a prerequisite to determine [the child's] custody." CT Page 11478
For Connecticut to have jurisdiction under its own jurisdictional rules it need not be shown that all four subsections of § 46b-93 are satisfied. The subsections are connected by "or" so jurisdiction lies in our state if the requirements of any subsection are met. The relevant portion of that statute says: "A court of this state shall have jurisdiction to make a child custody determination by initial or modification decree if: (1) This state (A) is the home state of the child at the time of the commencement of the proceeding . . .
The "proceeding" meant is the "custody proceeding" and such a proceeding by UCCJA definition includes a proceeding to determine "visitation rights" [§ 46b-92(3, (4)]. Proceedings "commenced" here, for UCCJA purposes at the very latest, when the February 1998 motion to modify visitation was filed, those proceedings continued to May 8, 1998 when the parties entered into an agreement approved and adopted by the court regarding visitation and the "proceeding" in a sense continued under the jurisdiction of the court in light of the fact that the agreement itself provided for court monitoring within four months.[3] At the time those proceedings commenced Connecticut was the "home state" of the child — soon after the February 1998 motion, as noted, the parties signed the PKPA statement acknowledging under the terms of the federal act that Connecticut was the home state of the child.
If the purposes of the UCCJA and the federal act are to be accomplished, a clear distinction must be made "between jurisdiction to determine initial custody of the child and jurisdiction to modify a prior custody order." Greenlaw v. Smith, supra, 869 P.2d at p. 1031. In other words, we are not dealing with a blank state where the court must decide whether, in a situation such as this, Connecticut or another state has or ought to have jurisdiction to decide custody or visitation. The point is Connecticut has made orders regarding visitation and the issue is whether it and it alone has jurisdiction to modify them — to say that our state has lost jurisdiction just because the child has left the state or to allow a party to ignore the fact that Connecticut had home state jurisdiction when it made custody or visitation orders by allowing a litigant to raise a best interest of the child argument would emasculate the UCCJA and the purposes sought to be achieved by the federal PKPA. It also rests on the unfounded assumption that a court which asserts its jurisdiction would somehow ignore the interests of the child when it decides CT Page 11479 whether or not to modify its initial orders.
Besides, to avoid draconian results that might be caused by a too rigid application of a rule vesting continuing jurisdiction in the court that entered initial orders, the courts have developed an interpretive overlay to the UCCJA which might be called a hybrid "standing jurisdiction" criteria. In effect, whatGreenlaw and other cases hold is that a state in Connecticut's position can decide it does not have exclusive continuing jurisdiction to modify its initial order or decree if one of the parents does not continue to reside in the state issuing the initial order and the child does not continue to have some connection with the initial decree state or state that made the initial orders. Greenlaw v. Smith, 869 P.2d at p. 1031; State exrel. DSK, 792 P.2d 118, 125 (Ut., 1990); Kumar v. Superior Court, 692 P.2d 1003, 1007-08; Arborgast v. Arborgast, 327 S.E.2d 675,681; see Yurgel v. Yurgel, 572 So.2d 1327, 1331 (Fla., 1990) for a good discussion; see also generally "Interstate Custody, Initial Jurisdiction and Continuing Jurisdiction under the UCCJA," Family Law Quarterly, XIV, No. 4, 1981, Brigette Bodenheimer. Such a position adopted by appellate courts in several jurisdictions should be favorably received in our state since these courts are all interpreting the UCCJA and where possible uniform interpretations of the act should be encouraged. Also, the policy represented by the PKPA is not compromised by this judicial overlay to the UCCJA since it relies on generally applied rules of standing jurisdiction not manufactured for purposes of avoiding federal policy.
In addition, the UCCJA itself in § 46b-97 adopts traditional common law inconvenient forum doctrine to permit "a court which has jurisdiction . . . to make an initial or modification decree [to] decline to exercise its jurisdiction . . ."; in that context best interest of the child factors can more properly be addressed.
This court concludes that Connecticut has exclusive jurisdiction to entertain any modification of its orders as to visitation. At the time such orders were entered, this state was the "home state" of the child. Furthermore, applying the just mentioned Greenlaw test, this court is not compelled to make a finding that this state has lost or does not have jurisdiction at the present time; that is, one of the parents, the father, still resides here and the child continues to have some connection with this state. The child's paternal and maternal relatives all live CT Page 11480 in Connecticut and visitation occurs in our state. The parties agreed to a temporary visitation schedule on June 15, 1999 wherein the mother was to bring the child to Connecticut for a visit.
In light of the foregoing, the court denies the motion to dismiss the defendant's motion to modify visitation on jurisdictional grounds.
The plaintiff also based her motion on a non-jurisdictional ground. Section 46b-97 of the General Statutes provides that a "court which has jurisdiction . . . may decline to exercise its jurisdiction . . ." The court has previously mentioned this statute. The court has indicated to counsel that it would leave the issue of whether Connecticut should decline jurisdiction to another judge — these matters are separate and distinct under the UCCJA. Brown v. Brown, 195 Conn. 98, 107 (1985). Various factors are set out in subsection (c) of § 46b-97 which a court should consider in deciding whether to decline jurisdiction and, asBrown points out, the factors are to be considered in light of the ultimate goal of determining "if it is in the interest of the child that another state assume jurisdiction." 195 Conn. at p. 109. Frankly, while writing this decision, the court was thinking of informing counsel that it would decide this non-jurisdictional issue also since the matter was briefed and at least argued and it had second thoughts about leaving the issue for another judge. But the court has decided not to address this question since, in the court's view, much depends on the application of one of the factors listed in § 46b-97. Subsection (3) states a court should consider, in deciding whether to decline jurisdiction, if there is "substantial evidence concerning the child's present or future care, protection, training and personal relationships . . . more readily available in another state." In other words, this court believes a specific offer of proof should be presented by the party asking the court to decline jurisdiction which details how the modification request will require the presentation of the type of evidence referenced in subsection (3) and how and why that evidence can only or best be presented in a New Hampshire court. This is especially so in a case where the plaintiff does not request or even desire, according to her counsel, that visitation be restricted or terminated or exclusively take place in New Hampshire. In any event, that record should be established and it is unlikely to be done before the end of the term which is fast approaching. CT Page 11481
As previously indicated, the court denies the motion to dismiss insofar as it is based on a claim that Connecticut no longer has jurisdiction, but having decided our state has jurisdiction the court does not decide the separate issue as to whether jurisdiction should be declined.
Corradino, J.