60 P.3d 644 (2002)
114 Wash.App. 766
In re the MARRIAGE OF SUSAN C., Respondent, and
SAM E., Appellant.
No. 18717-9-III.
Court of Appeals of Washington, Division 3, Panel Two.
December 31, 2002.
*645 Thomas N. Tremaine, Northwest Justice Project, Spokane, Michael G. Pettit, Wiley & Pettit, Pullman, Juliana Repp, Spokane, for Appellant.
Joseph N. Beck, Luce, Lombino & Riggio, Tacoma, for Respondent.
BROWN, C.J.
Today, we decide whether the Southern Ute Indian Tribe or the State of Washington has jurisdiction over the visitation dispute between Mr. E., a tribal member living on the reservation in Colorado, and Ms. C., a non-tribal member who now resides in Washington, regarding the parties' son, Benjamin. In 1990, Ms. C. originally submitted to the tribal court's jurisdiction securing custody of Benjamin. In 1994, after frequently invoking the tribal court's jurisdiction to her advantage, Ms. C. left Colorado for Washington failing to disclose her or Benjamin's location to the tribal court, failing to provide visitation to Mr. E., as ordered by the tribal court, and failing to continue Benjamin's play therapy *646 ordered by the tribal court to resolve abuse allegations.
In 1999, after years of continuous litigation, the Washington trial court decided the tribal court initially had valid jurisdiction, but under In re Marriage of Greenlaw, 123 Wash.2d 593, 869 P.2d 1024 (1994), Washington assumed jurisdiction to modify visitation because Benjamin no longer had "`more than slight contact'" with the Tribe. Clerk's Papers (CP) at 369. Further, the trial court decided it was in Benjamin's best interests for the Washington trial court to assume jurisdiction. The trial court in essence adopted the tribal court's interim visitation plan and ordered the Tribe to pay the mother's travel expenses while accompanying Benjamin to Colorado. Mr. E., the Tribe, and the tribal court's appointed guardian ad litem now seek review of the 1999 trial court orders.
In a matter of first impression, we hold the trial court erred in applying the tribal court jurisdiction provisions of CR 82.5(c). Further, under Greenlaw, the trial court erred when considering slight contact because Ms. C. was responsible for the reduction in contact. Last, under these facts, including the continuous, extensive proceedings in the tribal court to protect Benjamin's interests, we cannot agree that his interests are best served by Washington jurisdiction. Accordingly, we reverse.

FACTS
Ms. C. and Mr. E. lived together in Colorado for approximately five years, forming a common law marriage under Colorado law. According to Ms. C., Mr. E. periodically assaulted her during their relationship. Both of them abused alcohol. Their son, Benjamin, was born in 1989.
In 1990, the couple separated, and Ms. C. filed a petition for legal custody of Benjamin in the Southern Ute Indian tribal court. Mr. E. is a member of the Southern Ute Indian Tribe and lived on the Tribe's reservation after the separation. After completing a home study, the tribal court awarded Ms. C. primary custody of Benjamin by final order, and allowed reasonable visitation by Mr. E.
In 1991, Ms. C., with counsel, filed a divorce petition in the tribal court. Temporary custody was modified at Ms. C.'s request to preclude visitation with Mr. E. The temporary order was modified at the end of the year to allow supervised visitation under the auspices of tribal social services.
In 1992, tribal social services arranged visitation schedules, but Ms. C. petitioned for a home study, for the appointment of a guardian ad litem, and to deny Mr. E. any visitation. Benjamin's tribal guardian ad litem, Timothy Heydinger, recommended the court continue to permit Mr. E. to visit Benjamin. Ivan Minch of the Tribe's social services office also recommended visitation coupled with Mr. E.'s attendance at domestic violence counseling, anger management counseling, and parenting skills classes. After considering additional home studies, the tribal court decided to allow visitation and entered a decree of dissolution in October 1992. It awarded legal custody of Benjamin to Ms. C., with visitation by Mr. E., and monitored by Mr. Minch. Both parties were required to attend counseling.
In 1993, the parties signed a visitation agreement, which was filed in the tribal court. The Tribe's department of social services was included as a party to the agreement. Mr. Minch signed for the department. The agreed plan detailed weekday, summer, and weekend visits. The plan referenced the tribal court's holiday visitation arrangements.
In June 1994, Mr. E. petitioned in June for a change in Benjamin's custody to him, alleging the possibility Ms. C. was subjecting Benjamin to emotional and sexual abuse. Four days later, Ms. C. countered with a motion to restrict Mr. E.'s right of visitation. In July, the tribal court issued an interim visitation order, then Ms. C. unsuccessfully applied for a restraining order, which in essence sought to terminate visitation until trial. Instead, the tribal court entered another temporary visitation order. In August, Ms. C. moved to Washington with her son without disclosing their location to either Mr. E. or the tribal court. Mr. E. moved for contempt, but through counsel, Ms. C. requested and was granted a continuance to September. The tribal court issued a show cause order to *647 Ms. C., to be heard at the September trial and, ordered play therapy for Benjamin to delve into the abuse allegations. Apparently before Ms. C. moved to Washington, Benjamin attended two play therapy sessions pursuant to a tribal court order.
The tribal court trial finally came on for hearing in October 1994. Ms. C. appeared through counsel, but not personally, and would not disclose her location. Mr. Minch testified that Ms. C. should remain Benjamin's primary caregiver, but that Mr. E. should also continue visitation. Mr. Minch was unable to better assess the sexual abuse allegation due to a preliminary, inconclusive report caused by Ms. C.'s move and Benjamin's failure to complete play therapy. The tribal court also considered a report from Benjamin's tribal court guardian ad litem, who recommended a temporary solution in which custody of Benjamin would remain with Ms. C., but would live with his father during the summer school vacation. The tribal court concluded the mid-range temporary solution proposed by the guardian ad litem was acceptable given the parties' circumstances. In an order filed November 4, 1994, the court required Ms. C. to undergo alcohol counseling, take Benjamin to play therapy to explore the sexual abuse allegations, and report to the court as to the results of the counseling and the therapy. The order specifically stated noncompliance would be cause for a finding of contempt.
In 1995, the tribal court entered an August 25 order, concluding Ms. C. failed to comply with the November 1994 order. It concluded it was in Benjamin's best interest for the court to order his return to the Southern Ute Indian Reservation as a ward of the court and his placement in temporary foster care pending further investigation of the abuse allegations. The court entered an order and writ of habeas corpus requesting that any judge to whom the writ was presented for enforcement give full faith and credit to the tribal court's findings and orders.
In January 1996, Mr. Hey dinger petitioned the Whitman County Superior Court to enforce the tribal court's order and writ. Extensive proceedings followed into 1997.
In February 1997, the trial court refused to issue the habeas corpus because the tribal court "turned the competing custody modification proceedings ... into a de facto dependency" and, therefore, "ceased to act like a court and transformed itself into a party in interest." CP at 307. The following month, the superior court granted the tribe's nunc pro tunc request to intervene. This court affirmed, deciding the tribal court lacked dependency jurisdiction. In re Welfare of Benjamin W.E., noted at 91 Wash.App. 1004, 1998 WL 289167 (1998).
In July 1998, after terminating its wardship, the tribal court ordered detailed, limited visitation between Benjamin and his father. For the first visit, the tribal court permitted Ms. C. to travel with Benjamin, allowing Benjamin's subsistence account to pay for her transportation and hotel costs. In July 1998, Ms. C.'s attorney withdrew from the tribal court case. The next month, Ms. C. filed an amended petition for modification of custody decree/parenting plan in the Washington trial court. The next month Ms. C. requested the trial court accept jurisdiction. Further proceedings in Washington progressed into 1999 without adherence to the tribal court's visitation order.
In 1999, the tribal court entered another visitation order on June 23 providing that Benjamin reside with his mother, but have visitation with his father during Benjamin's summer and winter vacations. The tribal court and Mr. Heydinger requested the trial court to enforce and recognize these orders. Further, the Tribe and the tribal court guardian ad litem asked that Ms. C. be found in contempt for not complying with the 1998 order. On August 5, 1999, the trial court entered the critical Order on Consolidated Cases.
The trial court found that except for phone calls with his father, Benjamin "has not had contact with the Southern Ute Tribe" since he and his mother moved to Washington. CP at 369. It concluded that while the tribal court had initial jurisdiction, Whitman County Superior Court assumed jurisdiction to modify visitation and custody "because the minor child no longer has `more than slight *648 contact' with the Southern Ute Indian Tribe and because it is in the best interest of the minor child." CP at 369. The court also provided by handwritten order: "If the mother has no other lodging arrangements such as staying with friends, the tribe shall pay reasonable lodging and board expenses. This expense is to be paid for one time only 1999 Summer Visitation." CP at 373. Ms. C. escorted Benjamin to visit his father from August 7 through August 27. The visitation took place generally as ordered by the Washington trial court with tribal assistance.
We granted discretionary review of the superior court's August 5, 1999 order before the superior court entered a final parenting plan in November 1999. Now this appeal is considered as a matter of right.

ANALYSIS
The issue is whether the superior court erred by concluding it had jurisdiction to modify the tribal court's custody order regarding visitation.
The determination of subject matter jurisdiction is a question of law reviewed de novo. In re Marriage of Kastanas, 78 Wash.App. 193, 197, 896 P.2d 726 (1995). The Southern Ute Indian Tribe contends the superior court was required under CR 82.5(c), to recognize and enforce its prior custody and visitation orders rather than assume modification jurisdiction.
CR 82.5(c) adopted effective September 1, 1995 provides:
The superior courts of the State of Washington shall recognize, implement and enforce the orders, judgments and decrees of Indian tribal courts in matters in which either the exclusive or concurrent jurisdiction has been granted or reserved to an Indian tribal court of a federally recognized tribe under the Laws of the United States, unless the superior court finds the tribal court that rendered the order, judgment or decree (1) lacked jurisdiction over a party or the subject matter, (2) denied due process as provided by the Indian Civil Rights Act of 1968, or (3) does not reciprocally provide for recognition and implementation of orders, judgments and decrees of the superior courts of the State of Washington.
(Emphasis added.) No issue is raised regarding the due process denial or reciprocal recognition provisions. Thus, our focus under CR 82.5(c) is jurisdiction. Ms. C. argues in her reply brief for the first time that the tribal court did not have initial jurisdiction over the parties and the subject matter. Because Ms. C. failed to file a notice of cross-review as required under RAP 5.1(d), we reject this untimely argument.
No Washington case law interprets or addresses CR 82.5(c) in our context. The former Uniform Child Custody Jurisdiction Act (UCCJA), chapter 26.27 RCW (1979) (repealed 2001), and the Parental Kidnapping Prevention Act of 1980 (PKPA), 28 U.S.C. § 1738A, are helpful in determining when jurisdiction has been assumed by another state.[1] However, the UCCJA and the PKPA solely reference "states." 28 U.S.C. § 1738A(a); former RCW 26.27.010(1). The statutes define "state" to mean a state, territory or possession of the United States, the District of Columbia, and the Commonwealth of Puerto Rico. 28 U.S.C. § 1738A(b)(8); former RCW 26.27.020(10). The statutes' legislative histories do not address whether the laws apply to Indian tribes.
Courts are split on the question. See In re Custody of Sengstock, 165 Wis.2d 86, 477 N.W.2d 310, 314 (1991) (holding the term "state" does not include an Indian tribe); In re Larch, 872 F.2d 66, 68 (4th Cir.1989) (holding that the PKPA does apply to tribes because tribal court judgments are entitled to full faith and credit under certain circumstances and tribes are similar to states for purposes of sovereignty and jurisdiction); Martinez v. Superior Court, 152 Ariz. 300, 731 P.2d 1244, 1247 (Az.Ct.App.1987) (holding an Indian tribe qualifies as a territory of the United States and thus is a state for *649 UCCJA purposes). The holdings from the Fourth Circuit and Arizona are persuasive.
The UCCJA, as codified in former RCW 26.27.030, provides in part:
(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if the conditions as set forth in any of the following paragraphs are met:
(a) This state (i) is the home state of the child at the time of commencement of the proceeding[.]
Former RCW 26.27.020(5) defines "home state" as that state in which the child resides at least six months prior to commencement of the action.
On the surface, Washington would appear to be Benjamin's home state if we rely solely upon the UCCJA because he had resided in Washington for several years prior to Ms. C.'s request for modification of the custody order. However, this observation must be tempered by the circumstances of Ms. C.'s secretive departure from Colorado and the continuous efforts by the Mr. E., the Tribe, and the guardian ad litem from that point to the present to assert tribal court jurisdiction over visitation issues.
Further, because the superior court was asked to modify an existing valid custody decree from a tribal court, it is helpful, when considering CR 82.5(c), to regard former RCW 26.27.030 together with former RCW 26.27.140, which provides:
(1) If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction.
The Washington Supreme Court in discussing this statute noted that the official comment to the parallel section in the UCCJA states:
Courts which render a custody decree normally retain continuing jurisdiction to modify the decree under local law. Courts in other states have in the past often assumed jurisdiction to modify the out-of-state decree themselves without regard to the preexisting jurisdiction of the other state. In order to achieve greater stability of custody arrangements and avoid forum shopping, subsection (a) declares that other states will defer to the continuing jurisdiction of the court of another state as long as that state has jurisdiction under the standards of this Act. In other words, all petitions for modification are to be addressed to the prior state if that state has sufficient contact with the case to satisfy section 3. The fact that the court had previously considered the case may be one factor favoring its continued jurisdiction. If, however, all the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere.

In re Marriage of Greenlaw, 123 Wash.2d 593, 600-01, 869 P.2d 1024 (1994) (citing UCCJA § 14 comment, 9 U.L.A. 292 (pt. 1) (1988)) (emphasis added). Here, apparently conceding the other jurisdictional factors favoring continued tribal court jurisdiction, the trial court focused on the slight contact language when deciding in favor of Washington trial court jurisdiction.
While Ms. C. had physical and legal custody of Benjamin without specific restriction on leaving Colorado, this record fairly indicates Ms. C. took Benjamin and ran to avoid the application of tribal court jurisdiction and orders when she became dissatisfied with tribal court rulings. Although kidnapping in the strict sense of the PKPA is not before us, it is worthwhile to note the PKPA attempts to limit the circumstances under which a court may modify another state's custody decree. Greenlaw, 123 Wash.2d at 604, 869 P.2d 1024. The PKPA mirrors the requirements in former RCW 26.27.140 for modification of another state's decree:
A court of a State may modify a determination of the custody of the same child made by a court of another State, if
(1) it has jurisdiction to make such a child custody determination; and
*650 (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.
28 U.S.C. § 1738A(f). The tribal court is conceded to have valid initial jurisdiction and certainly has never declined to exercise that jurisdiction in these modification proceedings.
In addition to the jurisdictional basis in former RCW 26.27.030, the PKPA includes the following basis for continuing jurisdiction of the decree state:
The jurisdiction of a court of a State which has made a child custody or visitation determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.
28 U.S.C. § 1738A(d). Subsection (c)(1), to which subsection (d) refers, requires that the initial decree state have jurisdiction to modify a custody decree under that state's own laws.
Greenlaw involved modification of a custody decree and analyzed the jurisdictional perspectives under both the PKPA and the UCCJA. The court stated that the PKPA and UCCJA create a presumption that the decree state "ha[s] continuing jurisdiction to modify its own order and other states must decline to modify until the decree state loses or declines jurisdiction." Greenlaw, 123 Wash.2d at 604, 869 P.2d 1024. Jurisdiction to modify a custody decree continues with the decree state so long as one of the parents or other contestants continues to reside in the decree state and the child continues to have more than slight contact with the decree state. Id. at 608, 869 P.2d 1024. The child's continued visitation with the parent who remains in the decree state may constitute more than slight contact with the decree state. Id.
Moreover, contrary to the situation in Greenlaw, we have the benefit of CR 82.5(c), which directly bears on the issue before us. Considering CR 82.5(c) along with our discussion of Greenlaw, the UCCJA, and the PKPA, our application of the law to the facts is shaped.
First, CR 82.5(c) provides for both exclusive (subsection 1) and concurrent (subsection 2) situations, the latter being the case before us. The trial court properly recognized the tribal court's initial jurisdiction over this dispute, both over subject matter and parties. Our focus is purely whether Washington acquired modification jurisdiction under the circumstances presented. Thus, it cannot be said the tribal court "lacked jurisdiction over a party or the subject matter," when Ms. C. removed herself and Benjamin from Colorado. CR 82.5(c)(1).
Second, until July 1998 Ms. C. submitted to tribal court jurisdiction, initially in person, then with counsel, and finally, after she left Colorado, by counsel. Significantly, it was not until August 1998 that Ms. C. filed her amended petition for modification of custody in the Washington trial court. The extensive 1990-1999 record of tribal court proceedings reviewed in the facts underscores the tribal court's continuous exercise of jurisdiction. That Ms. C. secretly removed herself and Benjamin to Washington certainly bears on the degree of contacts she had with the Tribe and the tribal court. But, her actions should not weigh heavily, if at all, when considering the degree of contact because Ms. C. prevented or resisted more contact.
In sum, Ms. C. was content while receiving the benefits of tribal court jurisdiction, but when she perceived burdens, she unilaterally reduced contact by first secretly leaving Colorado and then with subsequent delaying events. To allow Ms. C. to decisively benefit from her conduct would frustrate the efforts of all courts to exercise proper jurisdiction and promote forum shopping. See former RCW 26.27.010(1)(i) (the purpose of the UCCJA is to avoid forum shopping). By her actions, Ms. C. distorted the facts bearing on Benjamin's contacts. In reality, Ms. C. maintained continual contact with tribal authority by participating in unceasing litigation, while unilaterally preventing Benjamin's contact with his father during the critical time. Given this record, we conclude the trial court erred when considering the Tribe lost jurisdiction solely on the basis of slight *651 contact. Under the circumstances, deferring to tribal jurisdiction is proper.
Next, we dispense with Ms. C.'s contention that we should defer to the trial court's separate finding it was in Benjamin's best interests to assert Washington jurisdiction. Without jurisdiction the trial court had no authority to proceed to modify the visitation arrangements set by the tribal court. Moreover, considering the tribal court's history of competent, continuous, and extensive proceedings focused on Benjamin's best interests, the tribal court is no less capable of addressing Benjamin's best interests than is the trial court in Washington. Significantly, the tribal court is centered where the gravamen of this dispute rests, where Mr. E. is located and where visitation is most likely to occur. The tribal court is better positioned to adjust visitation under these circumstances and has services available to monitor and timely report upon such problems as may arise during visitation.
Our resolution of the jurisdiction issue also makes it unnecessary for us to address the issue of whether the trial court erred by ordering the Southern Ute Indian Tribe to pay Ms. C.'s travel expenses for the 1999 summer visit. We note in passing that the tribal court seemed prepared to take care of these same expenses by deducting them from Benjamin's subsistence account in its interim visitation plan. It appears the trial court merely attempted to adopt the tribal court's funding mechanism.
Reversed.
KATO, J., concurs.
SCHULTHEIS, J. (dissenting).
I agree with the majority opinion that the former Uniform Child Custody Jurisdiction Act (UCCJA) and the Parental Kidnapping Prevention Act of 1980(PKPA) apply to custody and visitation orders entered by tribal courts. However, I find that the Southern Ute Indian tribal court lost subject matter jurisdiction over the visitation dispute between these parties. Accordingly, I respectfully dissent.
As the majority recognizes, the superior courts of this state may modify another state's custody decree if the foreign court that rendered the decree no longer meets jurisdictional prerequisites and the Washington court has jurisdiction. Former RCW 26.27.140 (1979). The court that renders a custody decree normally retains continuing jurisdiction to modify the decree. In re Marriage of Greenlaw, 123 Wash.2d 593, 600-01, 869 P.2d 1024 (1994) (citing UCCJA § 14 comment, 9 U.L.A. 292(pt. 1) (1988)). "`If, however, all the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere.'" Id. at 601, 869 P.2d 1024 (quoting UCCJA § 14 comment, 9 U.L.A. 292 (pt. 1) (1988)) (emphasis omitted).
Here, Washington assumed jurisdiction under former RCW 26.27.030(1)(a) (1979) as Benjamin's home state. Although Mr. E. continued to reside on the reservation, Benjamin had not visited the reservation since he left with his mother several years earlier. The record indicates that Benjamin occasionally spoke to his father on the telephone, but these brief conversations did not elevate his contact with the Tribe to anything more than slight. As the superior court noted, all evidence regarding Benjamin's home life, schooling, parental care, and general welfare was present in Washington.
Overall, the record supports the trial court's conclusion that Benjamin no longer had more than slight contact with the Southern Ute Indian Tribe. Consequently, I agree with the superior court that the tribal court did not have continuing modification jurisdiction. Because I find that Washington assumed jurisdiction as Benjamin's home state, I would affirm the superior court's modified parenting plan.
NOTES
[1] Since requests for relief took place before July 22, 2001, the newly enacted Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), chapter 26.27 RCW, is not applicable. RCW 26.27.921.