[No. 15653-9-II. Division Two. November 19, 1992.]

*In the Matter of the Marriage of* ROSEMARY B. GREENLAW, *Appellant, and* DANIEL M. SMITH III, *Respondent.*

---

[2]Significantly, the State was represented on appeal by the office of the King County Prosecuting Attorney.

*Rosemary B. Greenlaw,* pro se.

*John J. Durkin* and *Troup, Christnacht, Ladenburg, McKasy & Durkin, Inc., P.S.; Bertha B. Fitzer,* for respondent.

ALEXANDER, J. — Rosemary Greenlaw appeals an order of the Pierce County Superior Court denying her motion to revise an order of a Pierce County court commissioner granting temporary custody of her son to Daniel Smith III her ex-husband and the child's father. She contends that the Superior Court erred in concluding that (1) the Superior Court had jurisdiction over this matter pursuant to the provisions of the Uniform Child Custody Jurisdiction Act, and that (2) Washington was a convenient forum. We reverse.

In 1982, the marriage of Rosemary Smith (now Greenlaw) and Daniel Smith III was dissolved by decree of the Pierce County Superior Court. Custody of their 3-year-old child,

Alex, was awarded to Greenlaw, subject to liberal rights of visitation in Smith.

Greenlaw resided in this state with her child until 1985. Thereafter she and Alex moved to Germany. In 1988 they moved from Germany to California. Greenlaw has resided in California ever since. In July 1991, during one of Alex's annual summer visits with his father, Smith petitioned the Pierce County Superior Court for modification of the child custody provisions of the dissolution decree. Upon the filing of the petition, a Pierce County court commissioner ordered Greenlaw to show cause why custody of Alex should not be transferred to Smith. The commissioner also restrained Greenlaw from removing the child from Smith's care pending the show cause hearing, and he appointed a guardian ad litem to report to the court regarding the custody issue.

Greenlaw appeared specially and challenged Washington's assumption of jurisdiction pursuant to the Uniform Child Custody Jurisdiction Act, contending that: (1) California was the child's home state; (2) no emergency, as contemplated by RCW 26.27.030, existed which would give Washington jurisdiction; and (3) California was a more convenient forum.

On September 19, 1991, after reviewing "all the material submitted by counsel and the preliminary guardian ad litem report and deeming itself fully advised . . .,"[1] the court commissioner determined that Washington had jurisdiction and he entered an order transferring custody of Alex to Smith pending further proceedings. Greenlaw then made a motion in Pierce County Superior Court to revise the commissioner's order. The motion was denied and Greenlaw appealed to this court.

---

[1] The record we have been furnished contains the report of the guardian ad litem; a report by Eileen McCarty, a licensed psychologist retained by Smith; two affidavits of Greenlaw; and records of a proceeding that occurred in 1982 regarding Greenlaw's efforts to eliminate Smith's visitation rights. The record indicates that the court commissioner interviewed Alex in chambers before rendering his decision. However, no transcript of that interview has been provided to this court.

██ Smith contends that the order granting him temporary custody of Alex is not appealable. He cites RAP 2.2(a), which provides in pertinent part:

[E]xcept as provided in sections (b) and (c), a party may appeal from *only* the following superior court decisions:

(1) *Final Judgment.* The final judgment entered in any action or proceeding.

. . . .

(6) *Deprivation of All Parental Rights.* A decision depriving a person of all parental rights with respect to a child.

. . . .

(13) *Final Order After Judgment.* Any final order made after judgment which affects a substantial right.

(Italics ours.) Sections (b) and (c) of the rule have no application to this case. Those sections have to do with appeals by the State in a criminal case (RAP 2.2(b)) and appeals of a superior court's decision reviewing a decision of a court of limited jurisdiction (RAP 2.2(c)). Clearly, RAP 2.2(a)(6) does not apply either, because this is not an action to deprive Greenlaw of *all* of her parental rights. The pertinent issue, therefore, is whether the Superior Court's order denying a motion to revise a temporary custody order is a final judgment under RAP 2.2(a)(1) or a final order after judgment under RAP 2.2(a)(13). Smith contends that it is neither; however, he cites no authority, other than the rule itself, to support this contention.

Generally, a final judgment is "one which ends the litigation . . . and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 89 L. Ed. 911, 65 S. Ct. 631 (1945). Because a temporary custody order leaves open the question of permanent legal custody, it does not end the litigation and is not, in our opinion, a final judgment. Additionally, because a temporary custody order is, by definition, not a final order, it is not appealable under RAP 2.2(a)(13).

The Superior Court's order denying revision of the commissioner's order may, however, be reviewed under RAP 2.3. That rule permits this court to grant discretionary review in cases where it appears that the superior court has committed probable error which substantially alters the status quo.

Clearly, the orders which Greenlaw asks us to review had a substantial impact on the status quo, not to mention the lives of Smith, Greenlaw and their child. That is made manifest by the fact that it has been over 1 year since the commissioner determined that Washington had jurisdiction and entered the temporary order and yet no final hearing has been scheduled on Smith's petition to modify. Considering the major impact of this order and the order of the Superior Court on the important relationship between the parties to this action and their child, we have determined that we can review the superior court order pursuant to RAP 2.3.

The central question we must examine on review is whether the Pierce County Superior Court had subject matter jurisdiction to entertain Smith's petition. Smith cites RCW 26.27, the Uniform Child Custody Jurisdiction Act (UCCJA), and argues that the Pierce County Superior Court properly assumed jurisdiction because there was an emergency and because the child had a significant connection to this state. We believe the determination of the existence of subject matter jurisdiction under the UCCJA is a question of law which is reviewed de novo. *See State ex rel. D.S.K.*, 792 P.2d 118, 123 (Utah Ct. App. 1990); *see also Dragoo v. Dragoo*, 99 Wis. 2d 42, 43, 298 N.W.2d 231, 232 (1980).

## I
### EMERGENCY JURISDICTION

Under the UCCJA, emergency jurisdiction to make custody determinations exists in appropriate cases. Specifically, RCW 26.27.030(1)(c) provides for jurisdiction where:

> [t]he child is physically present in this state and (i) the child has been abandoned or (ii) *it is necessary in an emergency to protect the child* because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; . . ..

(Italics ours.)

Greenlaw asserts that there was an insufficient showing of an emergency to justify the trial court's assertion of sub-

ject matter jurisdiction. Thus, at issue is whether the record supports the conclusion that an emergency existed.

No Washington cases have been found that construe RCW 26.27.030(1)(c); however, courts from other jurisdictions have construed similar provisions in their child custody jurisdiction acts. While these decisions are not binding precedent, we can look to them for guidance.

In *State ex rel. D.S.K.*, *supra*, Utah's Court of Appeals held that the UCCJA's emergency jurisdiction provisions apply only to extraordinary circumstances, and should be applied to neglect situations only if harm is imminent. *D.S.K.*, 792 P.2d at 127. Because no findings were made in that case that the alleged neglect created a risk of imminent harm, the court held that Utah's assertion of emergency jurisdiction was improper. *D.S.K.*, 792 P.2d at 128; *see also In re Higgins*, 76 Or. App. 695, 699, 711 P.2d 176, 178 (1985) (although there was evidence that the child had been neglected, there was no evidence at the time of the hearing that an emergency existed).

In *Swan v. Swan*, 106 Nev. 464, 466 n.1, 796 P.2d 221, 222 (1990), Nevada's Supreme Court held that emergency jurisdiction did not exist even though there was evidence that the mother used alcohol and marijuana. While acknowledging that such evidence might be relevant at a hearing regarding the mother's fitness, the court concluded that it was not relevant for the purpose of determining whether the trial court properly exercised subject matter jurisdiction. *Swan v. Swan*, *supra*.

In *Hafer v. Superior Court*, 126 Cal. App. 3d 856, 862-63, 179 Cal. Rptr. 132, 136 (1981), the California Court of Appeal affirmed the Superior Court's decision declining to exercise emergency jurisdiction despite allegations that the father: ignored medical complaints of the children; left the children alone when they were only 6 and 8 years old; disciplined the children harshly with a switch; and allowed the children to eat foods they were allergic to. The court emphasized that the Superior Court could not exercise emer-

gency jurisdiction because "no competent evidence before the superior court warranted a finding of emergency and no such finding was unequivocally made." *See Hafer*, 126 Cal. App. 3d at 863.

■ From these cases we can glean the principle that assumption of emergency jurisdiction under the UCCJA is to be undertaken only in extraordinary circumstances, such as where a child would be placed in imminent danger if jurisdiction were not exercised. *See* Donigan, *Child Custody Jurisdiction: New Legislation Reflects Public Policy Against Parental Abduction*, 19 Gonz. L. Rev. 1, 12 (1983-1984) (citing UCCJA § 3 commissioners' note, 9 U.L.A. 122, 124 (1979)). We find ourselves in agreement with this principle.

We are somewhat hampered in our effort to determine whether the Pierce County Superior Court properly assumed emergency jurisdiction, because neither the commissioner nor the superior court judge specified what facts led them to conclude that there was an emergency. We must, therefore, resort to the record to see if there is support for their rulings. As Smith stresses, the record does indicate that Alex prefers living with his father. It also reveals that Alex's mother has left him in the care of third parties for periods of time. Furthermore, Alex's psychologist and the guardian ad litem both opined that Alex would be better off in his father's custody. In that regard, the psychologist stated that:

> Alex has inappropriately been put in the position of self-parenting as a result of the neglect and virtual parent abandonment by his mother, his custodial parent. This situation is injurious to Alex and in my opinion there is an immediate need for corrective intervention to avoid additional injury and to assist Alex in a program of normal childhood development.

While this evidence is certainly relevant insofar as a custody determination is concerned, it is not enough to justify an assumption of emergency jurisdiction. In our judgment, the record does not establish "extraordinary circumstances" or that Alex was in "imminent danger" of harm. A close reading of the reports of the guardian ad litem and the psychologist, as well as Greenlaw's affidavits, leads us to

conclude that the psychologist's opinion that Alex was neglected and virtually abandoned is without justification. Significantly, the psychologist did not speak with Greenlaw before she formed her opinion that Alex should be allowed to remain with his father on a permanent basis. Greenlaw's affidavits, which are not refuted, contradict the allegation that she abandoned and neglected Alex. While Greenlaw concedes that she placed Alex with her fiance for a period of time, she says that she did this to provide continuity for his schooling since her job required her to travel during the week. During this period she maintained contact with the child on weekends. Furthermore, Alex conceded to the psychologist that he got along with his mother's fiance "just fine". Assuming Greenlaw is telling the truth, this does not strike us as an extraordinary circumstance calling for assertion of emergency jurisdiction. We recognize that Smith may see the situation in a different light; however, until the conflicting positions of the parties can be fully sorted out at a hearing, Greenlaw, as the parent awarded custody in the decree, should have the benefit of the provisions of that decree.[2]

## II
### SIGNIFICANT CONNECTION TO WASHINGTON

Greenlaw contends, additionally, that the commissioner and Superior Court erred in determining that Washington had jurisdiction pursuant to RCW 26.27.030(1)(b). That statute provides for jurisdiction if:

> It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; . . ..

---

[2]Even if emergency jurisdiction existed, such jurisdiction is only temporary and it exists only until the state with more contacts with the child can consider the custody question. *See State ex rel. D.S.K., supra; Iacouzze v. Iacouzze,* 137 Ariz. 605, 607-08, 672 P.2d 949, 951-52 (Ct. App.), *aff'd,* 137 Ariz. 584, 672 P.2d 928 (1983).

Greenlaw contends that Alex has no significant connection with Washington, and that most of the evidence relating to Alex's care is in California. Again, the central question is whether the record supports the conclusion that Alex and at least one of his parents have a significant connection to Washington and there is substantial evidence in this state concerning Alex's present or future welfare.

■ The relevant facts to be assessed in determining whether the "significant connection/substantial evidence" test has been satisfied are those existing at the time jurisdiction is sought to be invoked. *See In re Marriage of Ieronimakis*, 66 Wn. App. 83, 92, 831 P.2d 172, *review denied*, 120 Wn.2d 1006 (1992). Here, jurisdiction was sought in July 1992, when Smith petitioned for a modification of the custody provisions of the couple's divorce decree.

In determining if the significant connection/substantial evidence test has been met, the case of *In re Thorensen*, 46 Wn. App. 493, 730 P.2d 1380 (1987) is instructive. In *Thorensen*, a mother sought custody in Washington after fleeing from Florida with her child. The mother's flight followed 2 years of custody litigation in Florida between the mother and father. *Thorensen*, 46 Wn. App. at 494-95. The court held that the "significant connection/substantial evidence" test was satisfied, noting that the mother and child had lived in Washington for nearly 2 years before the mother sought custody. *Thorensen*, 46 Wn. App. at 503. As support for the decision, the court noted that the trial court in Washington had school attendance and grade records and a report from the Washington family court. *In re Thorensen, supra.*

■■ Unlike *Thorensen*, the record here shows that Alex has little connection with Washington. He has not lived in Washington for an extended period of time and his primary residence at the time Washington invoked its jurisdiction was in California. Alex had spent some summers visiting his father in Washington since Greenlaw and Alex returned from Germany in 1988, but it would be a stretch to conclude that this connection is "significant". Furthermore, while

Alex has relatives who reside in Washington, and while Alex has attended counseling sessions here, these connections are not sufficient to satisfy RCW 26.27.030(1)(b).

We are not unmindful of the fact that there are witnesses in this state who will testify that Alex would be better off with his father than with his mother. Alex has met with a psychologist in this state and that person and the guardian ad litem both seem to favor Alex living with his father. However, the existence of these opinions does not, in our judgment, satisfy the significant connection/substantial evidence test. If they did, the test would be rather meaningless, because anyone could satisfy it by simply engaging "experts" to interview a child and write reports favorable to the party's position.

Because Alex's connections with Washington consist primarily of summer visits with his father, it appears to us that the significant connection/substantial evidence test has not been satisfied and, thus, Washington does not have jurisdiction. This conclusion is consistent with the view that the "significant connection" and "substantial evidence" factors of the UCCJA are intended to limit rather than proliferate jurisdiction. *See In re Donaldson*, 178 Cal. App. 3d 477, 489, 223 Cal. Rptr. 707, 713 (1986) (citing *In re Marriage of Ben-Yehoshua*, 91 Cal. App. 3d 259, 265 n.3, 154 Cal. Rptr. 80 (1979)); *Bacon v. Bacon*, 97 Mich. App. 334, 293 N.W.2d 819 (1980).

## III
### CONCLUSION

Having concluded that Washington did not have any basis for assuming jurisdiction under the UCCJA, it is unnecessary for us to determine if California is, as Greenlaw suggests, the more convenient forum. We, therefore, reverse the Superior Court's order denying Greenlaw's motion to revise the commissioner's order granting temporary custody of Alex to Smith. We remand the matter to the Superior Court with the direction to enter an order consistent with this opinion. In the event either of the parties to this litigation

766

petitions a court in another state for an order affecting the custody of Alex, either before or after our mandate issues, we urge the Pierce County Superior Court to cooperate with that court by communicating with it and exchanging information. *See* RCW 26.27.060.

MORGAN, A.C.J., and SEINFELD, J., concur.

After modification, further reconsideration denied January 28, 1993.

Review granted at 121 Wn.2d 1021 (1993).