[No. 28640-1-III.   Division Three.   May 8, 2012.]

*In the Matter of the Parentage of* KALEIGH LYN RUFF.

JAMIE LYN RUFF, *Respondent*, v. DENNIS A. KNICKERBOCKER, *Appellant*.

110

*Dennis C. Cronin* (of *Law Office of DC Cronin*), for appellant.

*Peter S. Lineberger*, for respondent.

¶1 SWEENEY, J. — Jurisdiction in interstate child custody disputes is governed by the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), chapter 26.27 RCW; 9 pt. 1A U.L.A. 649 (1999). It is detailed, specific, and mandatory. Here, a Washington superior court assumed jurisdiction of an interstate custody dispute after a Montana district court had exercised jurisdiction. The court did not have the authority to do that under the UCCJEA. We reverse the court's order and remand for further proceedings.

## FACTS

¶2 Jamie Ruff and Dennis Knickerbocker lived in Shelby, Montana, when their daughter, Kayleigh, was born

in 1999. They ended their relationship soon after Kayleigh's birth. Ms. Ruff petitioned for an interim parenting plan in Toole County, Montana. The Montana Ninth Judicial District Court entered an order for interim parenting plan on October 24, 2002. It provided that Ms. Ruff maintain "temporary custody" unless she moved out of Shelby. If Ms. Ruff moved, it provided that she have primary physical custody of Kayleigh and that Mr. Knickerbocker have visitation every other weekend and whenever Ms. Ruff otherwise brought Kayleigh to Shelby.

¶3 Ms. Ruff moved to Spokane with Kayleigh in 2003 and the two lived in Washington from 2003 to 2006. Kayleigh lived in Montana with Mr. Knickerbocker from 2006 to 2007. Kayleigh has lived with Ms. Ruff in Spokane, Washington, since 2007. Mr. Knickerbocker continues to live in Montana.

¶4 Ms. Ruff petitioned for a parenting plan, a residential schedule, and child support in Spokane County Superior Court on July 17, 2008. She also moved ex parte for a restraining order and temporary orders. The request for a restraining order was prompted by fear that Mr. Knickerbocker would take Kayleigh to Montana. Mr. Knickerbocker tried to remove Kayleigh from day care after a care provider refused to release Kayleigh to him on July 15, 2008. Mr. Knickerbocker petitioned to modify custody in Spokane County Superior Court on the same day. The cases were consolidated, and the court concluded that there was "a need for Washington State to exercise emergency jurisdiction, if necessary, so child's residence remains stable pending the hearing." Clerk's Papers (CP) at 514. The court also concluded that Mr. Knickerbocker consented to jurisdiction by filing his petition. *Id.* A temporary visitation order provided that Ms. Ruff would maintain primary residential custody and that Mr. Knickerbocker would have scheduled visits.

¶5 While the Washington custody case was pending, Mr. Knickerbocker and Ms. Ruff moved to dismiss the pending

Montana custody case "because the parties both agree that Washington State now has jurisdiction for entry of the final parenting plan and child support orders in this action." *Id.* at 517. The Montana court dismissed the case on January 8, 2009. The Spokane County Superior Court concluded it had jurisdiction to enter a parenting plan and residential schedule on October 27, 2009:

> This court has jurisdiction over the child for the reasons set forth below:
>
> This state is the home state of the child because:
>
> > the child lived in Washington with a parent or person acting as a parent for at least six consecutive months immediately preceding the commencement of this proceeding.
> >
> > . . . .
>
> The child and the parents or the child and at least one parent or person acting as a parent have significant connection with the state other than mere physical presence, and substantial evidence is available in this state concerning the child's care, protection, training and personal relationships, and
>
> > . . . .
> >
> > the child's home state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under RCW 26.27.261 or .271.

*Id.* at 271. The court entered a parenting plan and residential schedule that same day. Those orders gave Ms. Ruff primary residential placement and Mr. Knickerbocker regular visits. Mr. Knickerbocker appeals.

## DISCUSSION

¶6 The only issue here on appeal is whether the Washington courts had authority, given the requirements of the UCCJEA, to enter the October 27, 2009, parenting plan and residential schedule.

■ ¶7 Both Washington and Montana have adopted the UCCJEA. Ch. 26.27 RCW; Mont. Code Ann. § 40-7-101. The

UCCJEA is "a pact among states limiting the circumstances under which one court may modify the [child custody] orders of another." *In re Custody of A.C.*, 165 Wn.2d 568, 574, 200 P.3d 689 (2009) (citing UCCJEA, 9 pt. 1A U.L.A. prefatory note at 649-51). It is "an attempt to deal with the problems of competing jurisdictions entering conflicting interstate child custody orders, forum shopping, and the drawn out and complex child custody legal proceedings often encountered by parties where multiple states are involved." *Id.* (citing UCCJEA prefatory note, 9 pt. 1A U.L.A. at 651; UCCJEA § 101 cmt., 9 pt. 1A U.L.A. at 657). In sum, the UCCJEA aims to prevent conflicting custody orders by determining when a state can modify a custody order entered in another state. *Id.*

¶8 Mr. Knickerbocker contends—for the first time on appeal—that the court lacked jurisdiction. He argues that Montana is Kayleigh's "home state" under the UCCJEA and therefore had continuing exclusive jurisdiction. *See* RCW 26.27.201(1)(a). He also argues that Washington could not have acquired jurisdiction from Montana because Montana had not declined to exercise its jurisdiction and Washington failed to properly exercise emergency jurisdiction. *See* RCW 26.27.231, .201(1)(b), (c), .221.

¶9 Ms. Ruff concedes that Washington is not Kayleigh's home state and that the court did not precisely follow the UCCJEA. Br. of Resp't at 9, 25. But she argues, nonetheless, that the court's order should not be reversed for a number of reasons. First, she urges that the question here is not whether the court had subject matter jurisdiction but instead whether Spokane was the proper venue. The difference she argues is important because if, as she argues, the Washington courts are just the wrong venue then the court's orders or judgments are not void. *See Dike v. Dike*, 75 Wn.2d 1, 8, 448 P.2d 490 (1968) (" '[W]here a court has jurisdiction . . . , no error in the exercise of such jurisdiction can make the judgment void . . . . This is true even if there is a fundamental error of law . . . . Such a judgment is, under

proper circumstances, voidable, but until avoided is regarded as valid.' " (quoting 31 AM. JUR. *Judgments* § 401, at 66 (1940))). Second, she urges that the Washington courts properly exercised emergency jurisdiction, in any event, given Mr. Knickerbocker's attempt to take the child from day care. Third, she argues that communicating with the Montana courts (as required by the UCCJEA) would have been useless because Mr. Knickerbocker had also petitioned for custody in the Washington courts. And finally, she argues that the Montana courts effectively declined jurisdiction by entering the January 2009 order dismissing the Montana case.

■■ ¶10 Whether Washington courts have subject matter jurisdiction is a question of law that we will review de novo. *In re Marriage of Kastanas*, 78 Wn. App. 193, 197, 896 P.2d 726 (1995). Interpretation of a statutory scheme and application of that scheme also present questions of law that we review de novo. *In re Parentage of J.M.K.*, 155 Wn.2d 374, 386-87, 119 P.3d 840 (2005).

I. Are the UCCJEA's requirements jurisdictional?

¶11 The parties disagree over whether the orders entered in violation of the UCCJEA's jurisdictional requirements are void. The answer depends on whether the UCCJEA effectively limits the court's subject matter jurisdiction or does something else. Ms. Ruff relies on a footnote in *A.C.*[1] to suggest that the UCCJEA's jurisdictional requirements relate to venue. Br. of Resp't at 11. And she urges that Mr. Knickerbocker consented to jurisdiction because he too filed a petition in Spokane County Superior

---

[1] 165 Wn.2d at 573 n.3 ("The UCCJEA uses the term 'subject matter jurisdiction,' and for consistency we use the statutory language. However, Washington courts did, in fact, have subject matter jurisdiction over the parties and the issues. *See* CONST. art. IV, § 6 (describing general jurisdiction of superior courts); *Dougherty v. Dep't of Labor & Indus.*, 150 Wn.2d 310, 316-17, 76 P.3d 1183 (2003) (subject matter jurisdiction concerns the type of controversy, not the facts of an individual case). The statute might have more accurately used the term 'exclusive venue' instead of 'subject matter jurisdiction.' ").

Court and he joined her motion to dismiss the Montana case. Mr. Knickerbocker counters that Ms. Ruff's reliance on a footnote in *A.C.* is misplaced and the UCCJEA does in fact limit subject matter jurisdiction. Reply Br. of Appellant at 1-3.

¶12 "Subject matter jurisdiction" " 'is the power and authority of the court to act.' " *Dougherty v. Dep't of Labor & Indus.*, 150 Wn.2d 310, 315, 76 P.3d 1183 (2003) (quoting 77 Am. Jur. 2d *Venue* § 1, at 608 (1997)). It "refers to the court's authority to entertain a type of controversy, not simply lack of authority to enter a particular order." *In re Marriage of Schneider*, 173 Wn.2d 353, 360, 268 P.3d 215 (2011) (citing *Marley v. Dep't of Labor & Indus.*, 125 Wn.2d 533, 539, 886 P.2d 189 (1994)). " 'If the type of controversy is within the subject matter jurisdiction, then all other defects or errors go to something other than subject matter jurisdiction.' " *Marley*, 125 Wn.2d at 539 (quoting Robert J. Martineau, *Subject Matter Jurisdiction as a New Issue on Appeal: Reining in an Unruly Horse*, 1988 BYU L. Rev. 1, 28). An order entered by a court without subject matter jurisdiction is void. *Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit County*, 135 Wn.2d 542, 556, 958 P.2d 962 (1998). The parties cannot consent to subject matter jurisdiction, nor can they waive objection to it. *Id.*; *Wampler v. Wampler*, 25 Wn.2d 258, 267, 170 P.2d 316 (1946).

¶13 Superior courts in Washington have broad constitutionally based jurisdictional authority. *Orwick v. City of Seattle*, 103 Wn.2d 249, 251, 692 P.2d 793 (1984). And we strictly and narrowly read efforts by the legislature to limit that jurisdiction. *Id.*

¶14 The UCCJEA is found in chapter 26.27 RCW, and the controlling statute here is RCW 26.27.201 (initial child custody jurisdiction). It provides that:

(1) Except as otherwise provided in RCW 26.27.231, a court of this state has jurisdiction to make an initial child custody determination only if:

(a) This state is the *home state of the child on the date of the commencement of the proceeding,* or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(b) A court of another state does not have jurisdiction under (a) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under RCW 26.27.261 or 26.27.271, and:

(i) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(ii) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(c) All courts having jurisdiction under (a) of this subsection have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under RCW 26.27.261 or 26.27.271; or

(d) No court of any other state would have jurisdiction under the criteria specified in (a), (b), or (c) of this subsection.

(2) Subsection (1) of this section is the exclusive jurisdictional basis for making a child custody determination by a court of this state.

RCW 26.27.201 (emphasis added).

¶15 Nothing in our constitution prohibits the legislature from creating procedural prerequisites to a court's exercise of jurisdiction. *See James v. Kitsap County,* 154 Wn.2d 574, 587-88, 115 P.3d 286 (2005); *Sullivan v. Purvis,* 90 Wn. App. 456, 459, 966 P.2d 912 (1998). And most authorities suggest that the UCCJEA's procedural requirements control the court's exercise of its subject matter jurisdiction. *A.C.,* 165 Wn.2d at 577; *In re Marriage of Hamilton,* 120 Wn. App. 147, 148-49, 84 P.3d 259 (2004); *In re Marriage of Susan C.,* 114 Wn. App. 766, 60 P.3d 644

(2002); UCCJEA § 201 cmt. 2, 9 pt. 1A U.L.A. at 673. We also conclude that it does.

¶16  The comments to the UCCJEA make clear the intent to limit subject matter jurisdiction: "It should also be noted that since jurisdiction to make a child custody determination is subject matter jurisdiction, an agreement of the parties to confer jurisdiction on a court that would not otherwise have jurisdiction under this Act is ineffective." UCCJEA § 201 cmt. 2, 9 pt. 1A U.L.A. at 673. And our Supreme Court endorsed this comment in *A.C.* with the statement "that to permit waiver of the jurisdictional provisions of the UCCJEA would undermine the goals of avoiding conflicting proceedings." *A.C.*, 165 Wn.2d at 577 n.8 (citing UCCJEA § 201 cmt. 2, 9 pt. 1A U.L.A. at 673). Our state and others then embrace the notion that the UCCJEA is a limit on subject matter jurisdiction. *See Hamilton*, 120 Wn. App. at 148-49 ("Under [the UCCJEA], Washington courts have subject matter jurisdiction to determine child custody in certain specified situations."); *Susan C.*, 114 Wn. App. 766 (identifying subject matter jurisdiction as the issue and concluding that this state had no jurisdiction to act under the UCCJEA when the Southern Ute Indian Tribe had already asserted jurisdiction).

¶17  We conclude then that the UCCJEA's procedural requirements are jurisdictional and Mr. Knickerbocker's consent could not have given Washington jurisdiction. Not only is jurisdiction not something that can be consented to generally, but nowhere in the UCCJEA is there a provision for the parties to waive the jurisdiction of one state in favor of another by their conduct or their agreement. Indeed, the comments to the UCCJEA and the court's reading of those comments in *A.C.* suggest just the opposite. *A.C.*, 165 Wn.2d at 577.

II. Did the court properly exercise emergency jurisdiction?

¶18  Mr. Knickerbocker contends that the court did not have jurisdiction because it failed to satisfy the UCCJEA's

requirements to invoke the emergency jurisdiction. Br. of Appellant at 17-20. And, relatedly, he argues the court failed to satisfy the UCCJEA's requirements for converting emergency jurisdiction into jurisdiction to enter permanent custody orders. Br. of Appellant at 21-23. Ms. Ruff responds that even if the court lacked jurisdiction to rule here, the court had emergency jurisdiction based on Mr. Knickerbocker's attempts to take the child. Br. of Resp't at 13. Again, the question is whether the courts of Washington had jurisdiction over this child custody dispute, given the open proceedings in Montana at the time proceedings commenced here in Washington. *See Deschenes v. King County*, 83 Wn.2d 714, 716, 521 P.2d 1181 (1974) ("The rule is well known and universally respected that a court lacking jurisdiction of any matter may do nothing other than enter an order of dismissal." (citing 21 C.J.S. *Courts* § 118 (1940))). By the clear language of the UCCJEA, they did not.

¶19 The Montana courts had exclusive jurisdiction when it first entered the custody order here; that jurisdiction continues and includes the exclusive jurisdiction to modify its order. Mont. Code Ann. § 40-7-202. The Washington courts, however, may exercise temporary emergency jurisdiction "if the child is present in this state and . . . it is necessary in an emergency to protect the child because the child . . . is subjected to or threatened with abuse." RCW 26.27.231(1). Mr. Knickerbocker argues that "by definition, no 'emergency' existed." Br. of Appellant at 15. RCW 26.27.231(1)'s plain wording requires that an emergency result in the child being "subjected to or threatened with abuse." Ms. Ruff responds that there was an emergency because Mr. Knickerbocker tried to take Kayleigh without Ms. Ruff's consent. Br. of Resp't at 12-13.

¶20 Neither "emergency" nor "abuse" is defined. *See* RCW 26.27.021. We then give the words their ordinary and common meaning, absent a statutory definition, and often turn to the dictionary. *Budget Rent A Car Corp. v.*

*Dep't of Licensing*, 144 Wn.2d 889, 899-900, 31 P.3d 1174 (2001). *Emergency* is "an unforeseen combination of circumstances or the resulting state that calls for immediate action." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 741 (1993). *Abuse* is "a corrupt practice or custom," "improper or incorrect use," "a deceitful act," "language that condemns or vilifies usually unjustly," the "act of violating sexually," or "physically harmful treatment." *Id*. at 8.

¶21 Washington courts have not passed on what an emergency is under the UCCJEA but has done so under the earlier Uniform Child Custody Jurisdiction Act (UCCJA). *See In re Marriage of Greenlaw*, 67 Wn. App. 755, 762, 840 P.2d 223 (1992), *rev'd on other grounds*, 123 Wn.2d 593, 869 P.2d 1024 (1994). The UCCJA provided that the state may exercise emergency jurisdiction if the child "has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent." Former RCW 26.27-.030(1)(c) (1979) (repealed by LAWS OF 2001, ch. 65, § 403). In *Greenlaw*, the court held "that assumption of emergency jurisdiction under the UCCJA is to be undertaken only in extraordinary circumstances, such as where a child would be placed in imminent danger if jurisdiction were not exercised." 67 Wn. App. at 762.

¶22 Here, the court concluded that it had emergency jurisdiction after adopting as its findings paragraphs 2.1, 2.2, and 2.4 of Ms. Ruff's "Motion/Declaration for an Ex Parte Restraining Order and for an Order to Show Cause" and "a need for Washington State to exercise emergency jurisdiction, if necessary, so child's residence remains stable pending the hearing." CP at 514. Ms. Ruff declared that she was afraid that Mr. Knickerbocker would take Kayleigh without permission. She also declared that Mr. Knickerbocker tried to take Kayleigh from her day care after he was denied permission to take her. Of course, the conduct and the circumstances are troubling. But we cannot conclude that they amount to "abuse." And we have no way to pass on the court's findings that adopt paragraphs 2.1, 2.2, and 2.4

of Ms. Ruff's motion and declaration because Ms. Ruff's motion for an ex parte restraining order and temporary orders were not part of the record here on appeal. And neither the July 18, 2008, motion for order to show cause hearing nor the show cause hearing was transcribed. On the record available then, we cannot conclude that the trial court had jurisdiction to enter the July 18, 2008, and August 8, 2008, orders based on "emergency jurisdiction."

¶23 But even assuming that the court correctly exercised temporary emergency jurisdiction on July 18, 2008, and August 8, 2008, the court did not have authority to enter further permanent orders. Mr. Knickerbocker argues that the court lacked jurisdiction to enter the October 27, 2009, orders because the court failed to follow the necessary procedure spelled out in the UCCJEA to move from temporary emergency jurisdiction to the general jurisdiction necessary to modify the Montana custody order permanently. *See* Br. of Appellant at 18-20; RCW 26.27.231. We agree.

¶24 The UCCJEA requires that the court assuming temporary emergency jurisdiction communicate and coordinate with the court that made the initial custody order:

> (3) If there is a previous child custody determination that is entitled to be enforced under this chapter, or a child custody proceeding has been commenced in a court of a state having jurisdiction under RCW 26.27.201 through 26.27.221, any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under RCW 26.27.201 through 26.27.221. The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.

> (4) . . . [U]pon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of a state having jurisdiction under RCW

26.27.201 through 26.27.221, [a court of this state] shall immediately communicate with the other court. A court of this state that is exercising jurisdiction pursuant to RCW 26.27.201 through 26.27.221, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.

RCW 26.27.231. Simply put, RCW 26.27.231(4) requires both courts to communicate with each other. This helps to "determine a period for the duration of a temporary order." RCW 26.27.231(4). The temporary order gives the petitioning party enough time to seek an appropriate order in the state that entered the initial custody decree. RCW 26.27.231(3). Also, the temporary order should have an expiration date: either when the court that issued the previous custody determination issues a new order or when the period for obtaining that order expires. *Id.* The petitioner must then get an order from the state that issued the initial custody order before the temporary order expires. *See id.* The court that entered the initial custody order can (1) retain jurisdiction and decide whether to modify its initial order, (2) decline to exercise jurisdiction in favor of a court with a more convenient forum, or (3) decline to exercise jurisdiction because the petitioner "engaged in unjustifiable conduct." RCW 26.27.221, .261, .271(1). Only once that state declines jurisdiction may the state with temporary emergency jurisdiction then exercise jurisdiction to permanently modify the initial custody order. *See* RCW 26.27.231(3).

¶25 This procedure was not followed and no one suggests otherwise. On this record the Spokane County Superior Court never communicated with the Montana court. *See* RCW 26.27.231(4). None of the court's orders contemplate how long it might take Ms. Ruff or Mr. Knickerbocker to get

an order from the Montana court. *See* RCW 26.27.231(3). None of the court's orders have an expiration date. *See id.*

¶26 Ms. Ruff argues that strict compliance with these procedures is not required. Br. of Resp't at 25. She also suggests that its requirements are procedural and, therefore, the court's orders only voidable. Br. of Resp't at 12 (citing *In re Marriage of Furrow*, 115 Wn. App. 661, 669, 63 P.3d 821 (2003)). Washington courts have not passed on whether RCW 26.27.231 requires strict compliance to assert jurisdiction. But other states have. Those states agree that a court asserting temporary emergency jurisdiction cannot enter permanent orders without following the procedures set forth in the UCCJEA. An Alabama court concluded that a trial court that had temporary emergency jurisdiction erred by granting a permanent custody order. *S.C. v. J.T.C.*, 47 So. 3d 1253, 1257-58 (Ala. Civ. App. 2010). The court had jurisdiction to enter a temporary order. So the appellate court vacated the permanent order and remanded the case so that the court could follow the UCCJEA's procedures. *Id.* at 1258. Similarly, a Nebraska court concluded that there was temporary emergency jurisdiction. But, because the court failed to communicate with the court that had issued the initial custody decree, that court too remanded with instructions to follow the UCCJEA's procedures. *In re Interest of Maxwell T.*, 15 Neb. App. 47, 61, 721 N.W.2d 676 (2006). A California court also concluded that a court that had temporary emergency jurisdiction under the UCCJEA lacked jurisdiction to enter findings in a dependency proceeding. *In re C.T.*, 100 Cal. App. 4th 101, 110, 121 Cal. Rptr. 2d 897 (2002).

¶27 Here we are led to conclude that the court did not have jurisdiction to enter any final orders, even assuming that it had the authority to temporarily assume emergency jurisdiction. Spokane County Superior Court was required to communicate with the Montana court "immediately," and it did not do so. RCW 26.27.231(4). There is also no expiration date for the temporary emergency jurisdiction as

required. RCW 26.27.231(3). The court then did not follow the mandatory procedure that would allow it to exercise jurisdiction to enter a permanent order.

¶28 Ms. Ruff points out that the Montana court ultimately determined that Washington was a more appropriate forum and the Montana court declined to exercise its jurisdiction in favor of the Washington courts exercising jurisdiction. From this, she argues that the parties were in substantial compliance with the UCCJEA. Br. of Resp't at 25. We disagree. The court did not follow the UCCJEA's mandatory procedures for exercising jurisdiction substantially or otherwise. The court did not comply with the UCCJEA.

¶29 Finally, it is difficult for us to criticize the superior court judge for doing what the parties asked her to do here. Indeed, her decisions are most reasonable; and were our standard of review one of abuse of discretion, we would easily affirm the orders. But both we and she are hamstrung by an intricate and specific uniform body of rules where, unfortunately, one size is calculated to fit all. But that problem requires a legislative fix, not a judicial one. *Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn.2d 494, 509, 198 P.3d 1021 (2009).

ATTORNEY FEES

¶30 Both Mr. Knickerbocker and Ms. Ruff request attorney fees under RAP 18.1. The UCCJEA provides for attorney fees to a prevailing party. RCW 26.27.511(1). There are no Washington cases that address whether a party who successfully argues a jurisdictional issue under the UCCJEA is entitled to attorney fees. But the court in Virginia has addressed the question in an opinion that we find persuasive. *Tyszcenko v. Donatelli*, 53 Va. App. 209, 215-21, 670 S.E.2d 49 (2008). There the court concluded that when the issue is only jurisdiction, fees are proper only when the party seeking to invoke jurisdiction has "engaged in unjustifiable conduct." *Id.*; *see* RCW 26.27.271(3). Clearly

that is not the case here, and we therefore will not award fees. *See also Delgado v. Combs*, 314 Ga. App. 419, 724 S.E.2d 436 (2012). We deny the requests for attorney fees.

¶31 We reverse the orders and remand for further proceedings.

KULIK, J., concurs.

¶32 BROWN, J. (dissenting) — In my view, the Spokane County Superior Court acted properly in asserting jurisdiction under our facts and procedural history.

¶33 First, the 2002 "Montana Temporary Interim Parenting Plan" was designed to remain in effect solely when Jamie Ruff resided in Shelby, Montana; the record indisputably shows years of Washington residency, including a substantial time immediately before the 2008 dispute arose without the parties once resorting to the Montana court. During the intervening time, the parties completely ignored, abandoned, and abated the Montana case, and for all practical purposes treated it as a nullity.

¶34 Second, when the 2008 dispute arose, Ms. Ruff initially applied for an emergency order in Spokane County. Immediately, the parties simultaneously petitioned for parenting plans in Spokane County and then jointly applied to have their petitions consolidated, submitting to Washington jurisdiction.

¶35 Third, by a November and December 2008 stipulation, the parties recited their agreement for Washington jurisdiction and attached the Washington consolidation order and the temporary residential, visitation, and child support orders for the Montana court's consideration. The Montana case was dismissed in January 2009, evidencing the Montana court's acceptance of the recited premises, its declination of jurisdiction, and its deferral to Washington— thus obviating the need for further communication between the courts.

¶36 Fourth, 10 months after Montana deferred to Washington jurisdiction, the parties in October 2009 fully litigated their parenting issues in Spokane County without mention of any jurisdictional dispute. Solely after he became dissatisfied with the outcome of the Washington litigation did Dennis Knickerbocker raise his hypertechnical Uniform Child Custody and Jurisdiction and Enforcement Act (UCCJEA), chapter 26.27 RCW, jurisdictional challenge in this appeal in a thinly veiled attempt to relitigate the issues in a new forum; this is forum shopping at its worst.

¶37 Given our factual and procedural background, I disagree with Mr. Knickerbocker that the UCCJEA presents any remaining jurisdictional impediment to the validity of the Spokane County Superior Court orders. This is not a case where the parties are dealing with conflicting child custody orders from competing jurisdictions, forum shopping by Ms. Ruff, or complex child custody legal proceedings with multiple states involved. *In re Custody of A.C.*, 165 Wn.2d 568, 574, 200 P.3d 689 (2009). This is a case of a Montana court deferring to a Washington court when dismissing its 2002 case after considering the parties' stipulation. Generally, stipulated facts are binding on the parties and the court, but the court's legal determinations are not controlled by such factual stipulations. *Ross v. State Farm Mut. Auto. Ins. Co.*, 132 Wn.2d 507, 523, 940 P.2d 252 (1997). While judicial estoppel, abandonment, laches, and waiver principles may cry out for recognition after about 18 months of Washington litigation, in my view, *A.C.* is both distinguishable and not applicable for the reasons given above.

¶38 Considering all, I would affirm. Accordingly, I respectfully dissent.