FILED
COURT OF APPEALS
DIVISION II

2013 JUL 30 AM 10: 34

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

STEVEN L. OSTROM,

Appellant,

v.

NICOLE GIBSON f/k/a NICOLE MADSEN,

Respondent.

No. 43314-1-II

UNPUBLISHED OPINION

PENOYAR, J. — Steven L. Ostrom appeals the trial court's decision to relinquish jurisdiction to Georgia in this parenting plan modification proceeding. Because the applicable factors outlined in the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), chapter 26.27 RCW, support the trial court's decision that Georgia is the more convenient forum, we affirm.

## FACTS

Ostrom and Nicole Gibson are the parents of two sons born in 1997 and 1999. In 2003, the Pierce County Superior Court entered an agreed parenting plan that allowed Gibson to relocate to Georgia with the boys. Ostrom was to have ongoing contact as well as visitation during the holidays.

Ostrom brought a contempt action against Gibson in 2009 for not allowing him to have scheduled visits with their sons in 2006 and 2008. After finding Gibson in contempt, the Pierce County Superior Court entered a purge condition requiring her to comply with the visitations scheduled for 2009 and 2011. In December 2011, Gibson obtained an emergency order from a Georgia court in Talbot County that prevented the boys from visiting Ostrom that month. The Talbot County court took jurisdiction on an emergency basis after the boys expressed reluctance

to make the scheduled December visit because of Ostrom's alleged misconduct the previous summer.

A hearing in Pierce County on the contempt matter was set over until the Washington and Georgia courts could hold a telephonic hearing to discuss the status of the case and which court should handle the current proceedings. Gibson disclosed during that hearing that she had filed a petition to modify the parenting plan in Georgia in addition to seeking the emergency order. The courts agreed that Pierce County would conclude the contempt proceeding, which concerned Gibson's compliance with the 2009 contempt order, and that Talbot County would assume jurisdiction over the modification proceeding.

Ostrom objected and argued that all of the facts concerning the modification focused on his alleged misconduct in Washington. He also asserted that the boys had worked with a guardian ad litem in Washington in 2004 and 2005 who should work with them again. The court responded that its biggest concern was the boys, who had lived in Georgia for the past 12 years and were old enough to have a voice in the matter. He added that a guardian ad litem in Georgia could meet with them and that any information from Washington could be provided in writing. The court entered an order retaining jurisdiction over the contempt proceeding but declining jurisdiction over the modification proceeding, adding that Georgia was now the "home state." Clerk's Papers at 1.

A Pierce County commissioner then found Gibson in contempt for preventing the boys from visiting Ostrom during the December 2011 school break. The resulting order provided that Gibson could purge the contempt by facilitating the boys' visitation with Ostrom in 2012, as permitted by the Talbot County court.

The Pierce County Superior Court subsequently heard Ostrom's motion for reconsideration of the order declining jurisdiction over the modification proceeding. Ostrom argued that Pierce County had jurisdiction over the modification under the UCCJEA and that it could decline jurisdiction only after finding, based on several statutory factors, that Washington was an inconvenient forum. Ostrom argued that these factors supported retaining jurisdiction in Washington. The trial court denied reconsideration after reviewing the applicable factors and concluding that Washington was an inconvenient forum for Gibson and the two boys. The court's written order incorporated its oral ruling. Ostrom now appeals, arguing that the trial court erred by relinquishing jurisdiction over the modification proceeding to a Georgia court.

## ANALYSIS

Ostrom argues that we should reverse the trial court because Washington rather than Georgia is the boys' home state as well as the most convenient forum, and because the court's decision rewards Gibson for her contempt.

We review a trial court's decision to decline jurisdiction under the UCCJEA to determine whether that decision was manifestly unreasonable or based on untenable grounds. *In re Marriage of Greenlaw*, 123 Wn.2d 593, 609, 869 P.2d 1024 (1994). Both Georgia and Washington have adopted the UCCJEA. GA. CODE ANN. §19-9-40 (2001); RCW 26.27.011. Our Supreme Court recently explained the purpose of this legislation:

> The UCCJEA arose out of a conference of states in an attempt to deal with the problems of competing jurisdictions entering conflicting interstate child custody orders, forum shopping, and the drawn out and complex child custody legal proceedings often encountered by parties where multiple states are involved. It is, in a sense, a pact among states limiting the circumstances under which one court may modify the orders of another.

*In re Custody of A.C.*, 165 Wn.2d 568, 574, 200 P.3d 689 (2009) (citations and footnote omitted); *see also In re Parentage of Ruff*, 168 Wn. App. 109, 114, 275 P.3d 1175 (2012).

The UCCJEA provides that jurisdiction remains with the state that made the initial child custody determination unless both parents and the child no longer live there or unless that state's court (1) determines that it no longer has jurisdiction or (2) determines that it should relinquish jurisdiction..[1] *A.C.*, 165 Wn.2d at 575; RCW 26.27.221. Consequently, even when the state that made the initial ruling continues to have jurisdiction, it may decline to exercise that jurisdiction if it decides that another state is a more convenient forum and in a better position to make the custody determination at issue. *A.C.*, 165 Wn.2d at 577 n.7; RCW 26.27.261.

Washington retained jurisdiction over this case because a Pierce County court entered the initial parenting plan and because Ostrom continues to reside in this state. *A.C.*, 165 Wn.2d at 575; RCW 26.27.211. Georgia could obtain jurisdiction because it is now the boys' home state and because the Pierce County court determined that Georgia was the more convenient forum under RCW 26.27.261. RCW 26.27.221; *see* RCW 26.27.021(7) ("home state" is state in which child lived with a parent for at least six consecutive months before the commencement of a child custody proceeding).[2]

In making that determination, the trial court was required to consider the factors set out in RCW 26.27.261(2):

> (a) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
> (b) The length of time the child has resided outside [the] state;

---

[1] A child custody determination includes a parenting plan. RCW 26.27.021(3).

[2] Because a child's periods of temporary absence from a state are included in the six-month period, the boys' visitation with Ostrom does not interrupt that period. RCW 26.27.021(7).

(c)  The distance between the court in this state and the court in the state that would assume jurisdiction;
(d)  The relative financial circumstances of the parties;
(e)  Any agreement of the parties as to which state should assume jurisdiction;
(f)  The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
(g)  The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and
(h)  The familiarity of the court of each state with the facts and issues in the pending litigation.

*See A.C.*, 165 Wn.2d at 577 n.7 (court should consider all relevant statutory factors before declining jurisdiction).

As Ostrom explained, the first factor in RCW 26.27.261(2) is not relevant because there is no evidence of domestic violence in this case. The trial court addressed the second factor in stating that the boys had lived in Georgia since 2000 or 2001 and by court order since 2003. The court referred to the third factor, the distance between Washington and Georgia, in observing that it was not reasonable for a guardian ad litem from Washington to travel to Georgia to do an investigation. With regard to the fourth factor, both parties argued that they had limited financial resources, but the trial court made no oral findings concerning the parties' financial circumstances. We note, however, that Ostrom is representing himself in this appeal and that Gibson's attorney withdrew after Ostrom filed his notice of appeal.

Referring to the fifth factor, which addresses any agreement the parties made concerning jurisdiction, Ostrom argued that the 2003 agreed parenting plan stated that Washington has exclusive jurisdiction. The trial court responded to this argument as follows:

> [T]o view Washington as somehow being entrenched with jurisdiction from the beginning of a case through the end of a case doesn't make a great deal of sense, and I know it's a reality that people move and new relationships are established, etc. The UCCJEA wasn't designed to invest one state forever with jurisdiction making important decisions regarding children. It was designed to have a more realistic and rational approach to jurisdictional issues.

Report of Proceedings (Mar. 9, 2012) at 20-21.

With regard to the factor concerning the nature and location of evidence required to resolve the pending litigation, the trial court focused on the two boys and on the fact that their friends, physicians, and counselors are in Georgia. The court reasoned that any information that Ostrom needed to present could be provided by declaration and that he could participate in the proceedings by telephonic hearing. The court had earlier observed that any information regarding Ostrom's criminal history could be provided in writing.

Finally, with regard to the ability of the court of each state to decide the issue expeditiously and the familiarity of each court with the pending litigation, Gibson noted that the case would be going to a new Pierce County judge if it remained in Washington and that any judge who took the case would have to become familiar with a large court file.

In the end, the trial court focused on the two boys and their considerable connection with Georgia, as opposed to their minimal connection with Washington. We do not view the court's decision that Georgia is the more convenient forum for the boys and their mother as manifestly unreasonable or based on untenable grounds, and we reject Ostrom's contention that the decision to decline jurisdiction rewards Gibson for her earlier contempt. We affirm the court's decision to relinquish jurisdiction over this matter to Georgia.

Affirmed.

43314-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Penoyar, J.

We concur:

Hunt, J.

Bjorgen, J.

7