
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STACY R. CLIFFORD, | ) | |
| | ) | No.  34087-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DOUGLAS R. CLIFFORD, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Douglas Clifford challenges a child custody determination made by the Benton County Superior Court, which he contends lacked subject matter and personal jurisdiction.  Although the aspect of the determination that he challenges was later modified and the order has now expired by its terms, both he and Stacy Clifford encourage us to retain and decide issues arising under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), chapter 26.27 RCW.  For reasons explained below we decline to do so.  We dismiss the appeal as moot.

FACTS AND PROCEDURAL BACKGROUND

Douglas and Stacy Clifford were married and lived in Florida with their three minor children before December 4, 2015, when Stacy[1] reported to police that Douglas had assaulted her. He was arrested and charged with domestic battery. Without notice to Douglas, Stacy promptly removed the children from school and moved to Benton County, Washington, where she has family.

On December 11, 2015, Stacy petitioned Benton County Superior Court for an order for protection for herself and her children. The superior court issued an order temporarily prohibiting Douglas from contacting Stacy or the children and set a hearing for December 24. The hearing was later continued to January 15. Meanwhile, on December 21, Douglas filed an action in Florida to dissolve the parties' marriage.

A lawyer for Douglas filed a special notice of appearance in the Benton County action along with briefing. He challenged (1) the court's subject matter jurisdiction under the UCCJEA, (2) the court's personal jurisdiction over Douglas, and (3) the sufficiency of Stacy's service of process.

At the hearing in Benton County to determine whether the temporary protection would be extended, Stacy argued that Washington had personal jurisdiction, apparently

---

[1] We use the parties' first names for ease of reading, intending no disrespect.

relying on RCW 26.50.240(d)(i) or (ii).[2]  Either basis for personal jurisdiction requires in

addition, in relevant part, that the respondent "must have communicated with the

petitioner . . . while the petitioner . . . resides in this state."  RCW 26.50.240(d)(2).

"[C]ommunicated" for this purpose "includes, but is not limited to, through the mail,

telephonically, or a posting on an electronic communication site or medium."  *Id.*  Stacy

contended that the communication requirement was satisfied by electronic mail that

Douglas allegedly sent to her on December 7.

Douglas contended that the electronic communication on which Stacy relied was

sent not to her, but to himself, at "thecliffordhouse@gmail.com," a family electronic mail

account he set up primarily for personal information and information relating to the

family's Florida household.  Clerk's Papers (CP) at 55-56.  He asserted that he often used

the account to make notes or record information.  According to him, Stacy had a separate

---

[2] Those provisions state that a Washington court may exercise personal
jurisdiction over nonresidents in protection order proceedings where the acts giving rise
to the petition for protection occurred outside of Washington and

>    (d)(i) The act or acts of the individual or the individual's agent
> giving rise to the petition or enforcement of an order for protection
> occurred outside this state and are part of an ongoing pattern of domestic
> violence or stalking that has an adverse effect on the petitioner or a member
> of the petitioner's family or household and the petitioner resides in this
> state; or
>    (ii) As a result of acts of domestic violence or stalking, the petitioner
> or a member of the petitioner's family or household has sought safety or
> protection in this state and currently resides in this state.

RCW 26.50.240(d)(i), (ii).

e-mail account that he used when sending messages to her. He argued that the message of December 7 was, on its face, not intended as a communication to her. At most, he stated, he had given Stacy access to the "thecliffordhouse" account so that she could access household information he recorded there.

Although the "To" field on the electronic communication in question indicated "Wife Stacy Clifford," Douglas contended that the field was completed automatically, perhaps when Stacy accessed the account and retrieved the item, and did not reflect any intent on his part to direct the communication to her. CP at 42. He pointed out that the subject line on the e-mail was "Domestic Notes 10/7." *Id.*

After hearing argument on January 15, the Benton County court extended the protection order for a year. As it related to the children, the court indicated in its order that Washington State "has temporary emergency jurisdiction . . . that may become final jurisdiction under RCW 26.27.231(2)." CP at 67. The court also granted Stacy temporary custody of the children.

In a motion for reconsideration, Douglas argued that the trial court lacked temporary emergency jurisdiction because a proceeding to determine child custody had been commenced in the home state of Florida, divesting the Benton County court of temporary emergency jurisdiction under the UCCJEA. Stacy's response asserted she had not been served with any process in a Florida proceeding. She argued that Douglas failed

to present evidence that a custody proceeding had been commenced and that his argument, unsupported by evidence, was untimely.

The motion for reconsideration was denied. Douglas filed a notice of appeal on February 12, 2016.

Approximately two months later, on April 7, 2016, a Florida court entered an order establishing Florida as the home state of the parties' children, indicating that Stacy had consented to Florida's jurisdiction. Shortly thereafter, the Florida court entered a further order acknowledging that Stacy had obtained an order for protection from the Benton County court, which the Florida court stated "exercised emergency temporary jurisdiction over the Minor Children." CP at 102. The Florida order stated, "[I]f the Superior Court of Washington for Benton County does not modify the Order for Protection to apply only to [Stacy] and not to the Minor Children, the parties may set a 15-minute telephone hearing with the Court to effectuate a conference call with the Washington court pursuant to the UCCJEA." CP at 103. On July 20, following a UCCJEA hearing with a judge of the Florida court, the Benton County court entered an order recognizing the Florida court's jurisdiction over the children and modifying the January 15 protection order by limiting its application to Stacy. By the time of oral argument of this appeal, the order for protection for Stacy had expired by its terms.

ANALYSIS

At oral argument, this panel questioned the lawyers as to why issues raised by Douglas are not moot. The parties responded differently, except to agree that this case presents legal issues arising under the UCCJEA that are of continuing and substantial public interest. Both parties asked us to retain and decide the case. We decline to do so.

"'[I]f the court can no longer provide effective relief,' then the case is basically moot." *State v. Cruz*, 189 Wn.2d 588, 597, 404 P.3d 70 (2017) (alteration in original) (quoting *State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012)). The general rule is that moot cases should be dismissed. *Id.* (citing *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972)). An exception exists for moot cases where it can be said that matters of "continuing and substantial public interest are involved." *Sorenson*, 80 Wn.2d at 558. Criteria to be considered in determining the requisite degree of public interest are the public or private nature of the question presented, the desirability of an authoritative determination for the future guidance of public officers, and the likelihood of future recurrence of the question. *Id.* "Arguably a fourth factor exists, that being the level of genuine adverseness and the quality of advocacy of the issues." *Hart v. Dep't of Soc. & Health Servs.*, 111 Wn.2d 445, 448, 759 P.2d 1206 (1988).

Douglas's first assignment of error is that the trial court lacked subject matter jurisdiction under the UCCJEA. The UCCJEA "aims to prevent conflicting [child]

6

custody orders by determining when a state can modify a custody order entered in another state." *In re Parentage of Ruff*, 168 Wn. App. 109, 114, 275 P.3d 1175 (2012). Stacy does not dispute that Florida is the children's home state for purposes of the UCCJEA and she agrees that Washington could not exercise "home state" jurisdiction under RCW 26.27.201(1). She argues that it never did—it exercised only temporary emergency jurisdiction under RCW 26.27.231.

The only challenge on subject matter jurisdiction grounds that Douglas argues on appeal is to the order of protection entered on January 15. RCW 26.27.231(2) provides that a court's temporary emergency jurisdiction continues, and its child custody determinations remain in effect "[i]f there is no previous child custody determination that is entitled to be enforced under this chapter and a child custody proceeding has not been commenced in a court of a state having jurisdiction."

At the time of the January 15 hearing, Douglas had asserted by an affidavit filed below that he had filed a dissolution action in Florida "relating to . . . a custodial determination of the [parties'] children." CP at 27-28. But he had not yet served process on Stacy and did not provide the Benton County court with pleadings in the Florida action or with Florida law from which the court could determine the scope or status of whatever child custody issues he had raised in the Florida court. As Stacy points out, no order was entered in the Florida proceeding until April 7, 2016. She argues that it is unreasonable to suggest that the Benton County court was powerless to act based on a

proceeding alleged to be pending in Florida but poorly documented for the Washington court, in which nothing happened until four months after Stacy sought protection.

The paucity of information about the Florida proceeding makes this case a poor vehicle for construing when a Washington court may reasonably exercise temporary emergency jurisdiction on the basis that a child custody proceeding "has not been commenced in a court of a state having jurisdiction" within the meaning of RCW 26.27.231(2).

Douglas also assigns error to the court's orders on the basis that it lacked personal jurisdiction over him, arguing that the facts that Stacy had access to the "thecliffordhouse" account and opened an e-mail he claims he sent to himself do not establish that he directed a communication to her in the state of Washington. Conflicting inferences can be drawn from the form and substance of the December 7 message. In response to the panel's observations at oral argument that the message can be construed as a communication directed at Stacy, Douglas pointed out, correctly, that the trial court made only the ultimate finding that it had personal jurisdiction, without entering any findings on the material disputed facts. The trial judge who entered the order of protection has since retired.

Whether electronic mail addressed to a communal account constitutes a "communication" to a person who opens the mail will be a largely fact-dependent issue under RCW 26.50.240(2). Since we lack any findings on the material disputed issues, we

8

would be engaged in a wholly advisory exercise if we were to address what facts might matter.

These are the only two issues presented by the appeal that we might consider retaining and deciding as matters of substantial and continuing public interest, were we presented with a more complete record.

Finally, Douglas contended at oral argument that we should accept review because the existence of the order of protection is damaging to him professionally. In a few situations, Washington courts have recognized that a trial court decision that would otherwise be moot is nonetheless reviewable if a party remains subject to collateral consequences. Examples are involuntary commitment proceedings, *see, e.g.*, *Born v. Thompson*, 154 Wn.2d 749, 762-64, 117 P.3d 1098 (2005); findings of child abuse, *see In re Dependency of H.S.*, 188 Wn. App. 654, 662, 356 P.3d 202 (2015); where one's medical license "hangs in the balance," *see State v. Bowen*, 51 Wn. App. 42, 45, 751 P.2d 1226 (1988); and criminal convictions, *see State v. Turner*, 98 Wn.2d 731, 733, 658 P.2d 658 (1983) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 108 n.3, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977) and *Sibron v. New York*, 392 U.S. 40, 53-54, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968)).

In all such cases, the party seeking relief identified an actual risk of tangible, material consequences. Douglas has not.

No. 34087-2-III
*Clifford v. Clifford*

We dismiss the action as moot. We deny both parties' requests for an award of attorney fees.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, J.

_____
Pennell, J.

10