
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2014 MAY -5 AM 9: 20

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Dependency of | ) | NO. 70121-5-I |
| | ) | |
| C.A. (DOB: 2/21/1995), | ) | |
| | ) | DIVISION ONE |
| A minor child. | ) | |
| | ) | |
| THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| C.A., | ) | |
| | ) | |
| Petitioner. | ) | FILED: May 5, 2014 |
| | ) | |

LEACH, J. — C.A. appeals a superior court order granting revision of a commissioner's ruling terminating her dependency guardianship and extending juvenile court jurisdiction. She claims that the 2012 adoption of WAC 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 substantially changed her circumstances after the establishment of her guardianship by excluding her from certain extended foster care services. The Department of Social and Health Services (Department) has moved to redesignate C.A.'s appeal as a motion for discretionary review. Because C.A. does not appeal a disposition following a finding of dependency by the juvenile

court, we redesignate this appeal as a notice for discretionary review. Because

C.A. fails to make the showing required by RAP 2.3(b), we deny discretionary

review and dismiss her petition.

## FACTS

C.A. was born on February 21, 1995. In 2006, a court entered orders of

dependency as to C.A.'s mother and father.[1] In 2007, C.A. began living with

Angela Pitts-Long, a licensed foster parent. On June 27, 2008, a court appointed

Pitts-Long as C.A.'s dependency guardian. The court's order stated, "The

dependency guardianship will continue until the child reaches 18 years of age or

until further order of the Court." It also stated, "[T]his dependency guardianship

has been established and it implements the permanent plan for the child."[2]

The guardianship has been very stable with no disruptions and no need

for services. C.A. has integrated into Pitts-Long's family.

---

[1] The identity of C.A.'s father is unknown.

[2] RCW 13.34.030(5) defines a "dependency guardian" as "the person . . . appointed by the court pursuant to this chapter for the limited purpose of assisting the court in the supervision of the dependency." Dependency guardians must meet the minimum requirements enumerated in RCW 74.15.030. See former RCW 13.34.236 (1994). The law does not require dependency guardians to be licensed foster parents; any person meeting the statute's requirements can serve as a dependency guardian. The fact that Pitts-Long was C.A.'s dependency guardian and also happened to be a licensed foster parent simply meant that she continued receiving foster care payments for C.A.'s care until the time that C.A. turned 18 and completed high school. If the court terminated C.A.'s guardianship before her 18th birthday and C.A. remained in Pitts-Long's care in extended foster care, Pitts-Long would continue to receive foster care payments.

Former RCW 74.13.031(10) (2012) authorized the Department to provide "continued extended foster care services to youth ages eighteen to twenty-one years to participate in or complete a secondary education program or a secondary education equivalency program, or a postsecondary academic or postsecondary vocational education program. The department shall develop and implement rules regarding youth eligibility requirements." RCW 74.13.020(7) defines "extended foster care services" as "residential and other support services the department is authorized to provide to foster children. These services include, but are not limited to, placement in licensed, relative, or otherwise approved care, or supervised independent living settings; assistance in meeting basic needs; independent living services; medical assistance; and counseling or treatment."

In 2012, the Department adopted WAC 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(2), titled "When is a youth not 'in foster care'?" This rule states, "For the purposes of determining initial eligibility for the extended foster care program, a youth is not in foster care if the youth is . . .[i]n a dependency guardianship." Previously, no statute or rule defined "in foster care" or "not in foster care."[3]

_____

[3] WAC 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 defines "in foster care":

For the purpose of determining initial eligibility for the extended foster care program, a youth is in foster care if the youth is under children's administration (CA) placement and care authority, is placed by CA in out of home care, in relative care, licensed foster

On January 22, 2013, C.A. filed a motion requesting that the court "enter an order modifying or terminating the dependency guardianship, placing her with her current caregiver and extending juvenile court jurisdiction past her 18th birthday so that she may apply for and receive extended foster care services, including financial support." She also asked the court to "authorize the Department the ability to allow her to live on campus if she is accepted into an approved educational program." C.A. planned to attend Washington State University (WSU) beginning in fall 2013. C.A. argued in her motion,

> Should her case be dismissed at her 18th birthday, she would be deemed ineligible for ongoing supports due to the entry of an agreement not anticipated when it was signed in 2008. [C.A.] will find herself without necessary resources and programs for her to complete high school and continue on to college. This was the very intent of the new legislation. It is clearly not in [C.A.]'s best interest to deprive her of these resources simply because the law changed.

---

home, licensed group care, or other suitable person placement. Provided:

(1) A youth who is temporarily away from a foster care placement in:

(a) A hospital;
(b) A drug/alcohol treatment facility;
(c) A mental health treatment facility; or
(d) For less than thirty days in a county detention center is considered to be in foster care.

(2) A youth who is temporarily away from his or her foster care placement without permission of the case worker or care giver, but who is expected to return to foster care within twenty days, is considered to be in foster care for purposes of determining initial eligibility.

(3) A youth who is committed to juvenile rehabilitation administration custody and who resides in a foster home, group home, or community facility, as defined in RCW 74.15.020 (1)(a).

In a declaration attached to her motion, C.A. stated,

> I would like to be able to stay living with Angela because I love her and she means a lot to me. I know that if I were to attend college at WSU that I would be able to return to Angela's when school is not in session if I did not have a place of my own. I would like the guardianship to be terminated and have my current caregiver be approved as a suitable adult or foster parent so that I can continue to have a place to live while I finish my education, even if I do go away for school. Angie has provided me with a loving and stable environment and supports my desire to further my education.

On February 5, 2013, a court commissioner granted C.A.'s motion and ordered that C.A. "shall remain placed in foster care with her current caregiver as a suitable adult placement with Angela Pitts Long." The commissioner found "that the change in laws since this agreed order of guardianship was entered created a substantial change that could not have been anticipated by the parties."

On March 19, 2013, the superior court granted the Department's motion to revise the commissioner's ruling. The superior court's order states,

1. A change in the law that was enacted subsequent [to] the establishment of the dependency guardianship in this case, which now provides licensed foster parents to continue getting paid for the care of foster children after the youth's 18th birthday is not a substantial change in circumstances sufficient to terminate a dependency guardianship. Particularly in this case where the youth is fully integrated into her guardian's home and has lived there successfully since 2008 when the guardianship was established and continued without oversight by the court or [Department of Children and Family Services].

2. The commissioner erred in terminating the dependency guardianship solely to circumvent WAC 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 that

prohibits extended foster care for youth who are in guardianships.

On March 26, 2013, C.A. appealed this order. On March 29, the superior court denied C.A.'s motion to stay its ruling pending her appeal.[4]

On June 12, 2013, the Department moved to redesignate C.A.'s appeal as a motion for discretionary review. A commissioner of this court referred the Department's motion to the panel for determination under RAP 17.2(b).

## ANALYSIS

We must first determine if the superior court's order is appealable under RAP 2.2(a) or subject only to discretionary review under RAP 2.3(b). Because we conclude that this order is not appealable as a matter of right, we must decide if this case meets the grounds for discretionary review stated in RAP 2.3(b). We grant the Department's motion to redesignate C.A.'s appeal as a notice for discretionary review and decline review.

We address first the Department's motion to redesignate this appeal. In In re Dependency of Chubb,[5] our Supreme Court held, "RAP 2.2(a) sets out the types of proceedings in which a litigant may appeal as a matter of right. Failure to mention a particular proceeding in RAP 2.2(a) indicates this court's intent that the matter be reviewable solely under the discretionary review guidelines of RAP 2.3." Appealable orders enumerated in RAP 2.2 include "[t]he disposition

---

[4] C.A. does not appeal the court's order denying a stay.
[5] 112 Wn.2d 719, 721, 773 P.2d 851 (1989).

decision following a finding of dependency by a juvenile court."[6] The court in

Chubb concluded that the only dependency disposition appealable as a matter of

right is disposition following a finding of dependency at the original fact-finding

hearing.[7] C.A. does not appeal this decision. This court reviews the court's

order granting revision of the commissioner's ruling solely under the discretionary

review standards of RAP 2.3.[8]

C.A. argues, "Chubb was not so limiting as the [S]tate makes out." She

relies on language stating that an "appeal by right applies only to the disposition

decision following the finding of dependency or to a marked change in the status

quo, which in effect amounts to a new disposition."[9] She contends that "the order

of revision re-instated the dependency guardianship and amounted to a new

disposition." But we rejected a similar argument in In re Dependency of M.A.,[10]

explaining,

---

[6] RAP 2.2(a)(5).

[7] Chubb, 112 Wn.2d at 722.

[8] See In re Dependency of R.V., 113 Wn. App. 716, 719, 54 P.3d 716 (2002) (discretionary review of a trial court order modifying a dependency guardianship); see also In re Marriage of Greenlaw, 67 Wn. App. 755, 759, 840 P.2d 223 (1992) (trial court order granting a motion to revise a temporary custody order is not an action to deprive the parent of all her parental rights under RAP 2.2(a)(6), a final judgment under RAP 2.2(a)(1), or a final order after judgment under RAP 2.2(a)(13) and thus is reviewable only under RAP 2.3), rev'd on other grounds, 123 Wn.2d 593, 869 P.2d 1024 (1994).

[9] Chubb, 112 Wn.2d at 725.

[10] 66 Wn. App. 614, 620-21, 834 P.2d 627 (1992).

[T]he language relied on by appellant is dicta and is immediately preceded by the court's discussion concluding that dependency review orders are interlocutory in character. Placing the language in the context of the entire Chubb opinion, we do not believe the court meant to allow an appeal by right for every dependency order in which the child's custody has been changed.

Discretionary review is available only in the following circumstances:

(1) The superior court has committed an obvious error which would render further proceedings useless;

(2) The superior court has committed probable error and the decision of the superior court substantially alters the status quo or substantially limits the freedom of a party to act;

(3) The superior court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by an inferior court or administrative agency, as to call for review by the appellate court; or

(4) The superior court has certified, or all the parties to the litigation have stipulated, that the order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that immediate review of the order may materially advance the ultimate termination of the litigation.[11]

C.A. fails to demonstrate any of these grounds. In fact, by revising the commissioner's ruling and thereby declining to terminate C.A.'s dependency guardianship and extend juvenile court jurisdiction, the court maintained the status quo.

C.A. alleges, "The court erred in granting the State's motion for revision as WAC 38[8]-25-0510 created a substantial change in circumstances such that termination of the dependency guardianship was clearly in C.A.'s best interest."

---

[11] RAP 2.3(b).

RCW 13.34.233(2) permits a court to modify or terminate a guardianship "upon the motion of any party . . . if the court finds by a preponderance of the evidence that there has been a substantial change of circumstances subsequent to the establishment of the guardianship and that it is in the child's best interest to modify or terminate the guardianship."

C.A. presents no authority establishing that a mere change in the law can create a "substantial change in circumstances subsequent to the establishment of the guardianship" warranting termination of the guardianship, and she presents no factual evidence showing a substantial change of circumstances. Even if C.A. were eligible at any point for extended foster care services, she does not show that she was at any point entitled to these services.

C.A. alleges that the change at issue is her "exclusion from extended foster care services altogether." She supports her contention by citing a declaration from Department social worker Oliver Pavek. In his declaration, Pavek stated,

> 1. I am the social worker who would be responsible for supervising [C.A.]'s dependency if the court granted a stay and the dependency remains in place. As a social worker, I would be required by [Department of Children and Family Services] policy to make health and safety visits to see [C.A.] every thirty days, and I would be required to prepare court reports and orders and attend review hearings, and permanency planning hearings, and otherwise monitor and supervise her care—none of which has been required or needed since the guardianship order was put in place in 2008. . . .

2. I am not aware of any educational benefits that [C.A.] would be denied, or deemed ineligible for if she is not dependent and in extended foster care. . . . Because she was dependent and in foster care prior to her 18th birthday, she is still able to go to college with the same benefits, financial aid, and scholarships that she would be eligible for if she were in extended foster care. Some examples include the following: Passport, Tree House and the Governor's Scholarship to mention a few. The scholarships and financial aid for which she would be eligible could cover tuition and room and board. Additionally, [Department of Children and Family Services] does not have separate funding available to it to pay for college tuition for those in extended foster care. . . .

3. Additionally, since she was a foster child prior to her 18th birthday, she could still live in the dormitory at college, regardless of whether she is in extended foster care. In fact, having been a foster child before her 18th birthday, she has an easier chance of getting into a dormitory than if she had not been in foster care. . . .

. . . .

5. [C.A.] also has medical coverage until the age of 21 regardless of whether she is in extended foster care, so she will not be denied medical benefits. . . . She would also have dental coverage. And, if . . . the guardianship were not terminated, she could be eligible for medical insurance until age 26 depending on her guardian[']s medical insurance coverage.

6. . . . [C.A] will be eligible to receive Social Security Administration benefits due to her mother passing away. Those benefits are not available to her if . . . she remains in extended foster care because that money will go instead to the state to reimburse for the cost of foster care.

7. In short, other than foster care payments that her foster parent would receive, I am not aware of any special benefits or services that [C.A.] will only receive through extended foster care.

C.A. asserts, "The evidence relied upon by Mr. Plavek [sic] as support for his beliefs as to the availability of programs for C.A. was based on an outdated chart from May 2012 that predates the emergency WAC defining C.A. as outside the realm of 'foster care.'" C.A. attached this chart, entitled "Educational Resources for Youth in Foster Care Through [the Department] in Washington State or a Tribal Child Welfare Agency," to her reply in support of her original motion. She referred to this chart as listing "the multitude of resources that were available to her four months ago when she was still defined as a youth in care."

The Department represented to the trial court that denying C.A.'s petition would deprive her of access to three services. First, a social worker would not perform health and safety visits. Second, the court would not supervise and monitor her dependency. Third, Pitts-Long would no longer receive monthly foster care payments. But C.A. makes no claim that she needs the first two services and in fact has not been receiving these services during the course of her dependency guardianship. She also states that the payments to Pitts-Long did not influence her desire to terminate the dependency guardianship. C.A. offers no evidence to rebut Pavek's statements about the programs and services available to her if the court denied her petition. Because the Department made these representations to the trial court and the court relied upon them in reaching its decision, the Department concedes that it is bound by these representations.

-11-

Therefore, if C.A. remains in the dependency guardianship or if the court terminates it, C.A. will have access to the same programs and services.

We note that C.A.'s access to these programs and services does not guarantee her entitlement to receive them. Their actual availability depends on other factors, including funding. Although C.A. is eligible to apply for certain programs and services, such as educational benefits and the opportunity to live in a college dormitory, a lack of resources prevents their availability to all qualified applicants.

Because C.A. offers no authority establishing that a change in the law created a substantial change in circumstances and that terminating the guardianship is in her best interest and she offers no factual evidence showing a substantial change in circumstances, she fails to demonstrate any of the grounds required by RAP 2.3(b). Therefore, we deny discretionary review.

## CONCLUSION

Because C.A. did not appeal the disposition that resulted from a finding of dependency at the original fact-finding hearing, we review the superior court's order granting revision of the commissioner's ruling solely under the discretionary review standards of RAP 2.3. Because C.A. shows no error, she fails to make

the showing required by RAP 2.3(b). We deny discretionary review and dismiss

her petition.

_Leach, J._

WE CONCUR:

_Verellen, ACJ_

_Becker, J._